¦181  ‾279
¦202  ²517
¦105a ¹578

WALTER F. WYMAN

*v.*

THE FORT DEARBORN NATIONAL BANK *et al.*

*Opinion filed October 16, 1899.*

1. BANKS—*right of bank to apply correspondent's deposit to payment of latter's debt.* A bank may, in good faith, apply a deposit account of a correspondent bank to the payment of a certificate of deposit issued by the latter, which is in effect a demand note due to the former, although the latter has drawn a check against the deposit which has not yet been presented or any notice thereof given to the drawee bank.

2. SUBROGATION—*when payee of check is entitled to share in fund arising from drawee's sale of drawer's collateral.* The holder of a check drawn by one bank upon another with which it has a deposit, is entitled, upon the application of the deposit by the drawee, without notice of the check, to the payment *pro tanto* of an obligation due to it from the drawer and secured by collaterals, to be subrogated, as against the drawer or its receiver, to the fund arising from the collateral securities and remaining after payment in full of the demand of the drawee.

3. EQUITY—*when relief may be had under bill to marshal securities.* Upon delivery of a check drawn by a bank upon its correspondent the payee acquires an interest in the drawer's deposit in the drawee bank, which entitles him to relief by bill to marshal securities, where, before presentment of his check, the drawee bank has applied the deposit upon its demand note against the drawer, which was also secured by collateral.

*Fort Dearborn Nat. Bank* v. *Wyman*, 80 Ill. App. 150, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

On September 1, 1896, the First National Bank of Helena, Montana, drew its check upon the Fort Dearborn National Bank of Chicago for $10,000, in favor of appellant. At the time this check was given the Fort Dearborn National Bank had in its possession, on deposit to the credit of the First National Bank of Helena, $20,523.67.

The Fort Dearborn National Bank at the same time held a
certificate of deposit of date May 15, 1895, from the First
National Bank of Helena, in the sum of $25,000, which
latter was secured by collateral for the face amount of
$30,000 of notes taken by the First National Bank of Hel-
ena and endorsed to the Fort Dearborn National Bank.
The Helena bank was indebted to the Fort Dearborn Na-
tional Bank, on account, $649.89. On the 4th day of Sep-
tember, 1896, the Helena bank was placed in the hands
of a receiver, and on the same day the Fort Dearborn
National Bank transferred the account on deposit with it
to the amount of $20,523.67 to itself, and credited its cer-
tificate of deposit with that amount, debiting the Helena
bank with the same sum, and leaving a balance due the
Fort Dearborn National Bank of $2321.39, with interest
thereon. On the 5th day of September the check drawn
in favor of appellant was presented for payment to the
Fort Dearborn National Bank, which was refused. On
the 21st day of January, 1897, the appellant filed in the
superior court of Cook county his bill, making the Fort
Dearborn National Bank and the receiver of the Helena
bank defendants, and sought to marshal assets. To this
bill of complaint a demurrer was interposed, and over-
ruled. Subsequently the defendants to the bill filed an
answer, and the cause was submitted upon bill and an-
swer, and a decree was entered in accordance with the
prayer of the bill, to reverse which the defendants sued
out a writ of error to the Appellate Court for the First
District, where the decree was reversed and the cause re-
manded with directions to dismiss the bill, whereupon the
appellee in the Appellate Court prosecuted this appeal.

PECKHAM, BROWN & PACKARD, for appellant:

By the execution and delivery of its check on a de-
posit account of bankable funds in the Fort Dearborn
bank sufficient in amount to meet it, the First National
Bank of Helena assigned and transferred *pro tanto* to the

payee that deposit account.  *Bank* v. *Banking Co.* 114 Ill.
483; *Abt* v. *Bank*, 159 id. 467; *Hotel Co.* v. *Bank*, 171 id. 531.

The Fort Dearborn bank being a creditor of the Helena
bank, and having not only this "fund" upon deposit but
also a "fund" of collateral securities in its possession, to
each and both of which funds it could resort for the sat-
isfaction of its claim against said Helena bank, had "an
interest" in each of these two funds.  Under these cir-
cumstances equity would compel the Fort Dearborn bank,
having recourse on these two funds, to exhaust the one
on which it alone had a claim, in order that the other, in
which alone the payee had an interest, should go as far as
possible to the satisfaction of his claim upon it, provided,
always, that the Fort Dearborn bank should not be in-
jured in its security nor materially delayed or inconven-
ienced in the collection of its debt.  Upon this theory the
bill in this case was framed and upon this theory the de-
cree was entered, and it presents a plainly proper case
of the marshaling of assets.  2 Beach on Modern Eq. Jur.
sec. 784; 1 Story's Eq. Jur. secs. 635, 636; *Aldrich* v. *Cooper*,
2 White & Tudor's L. C. in Eq. 82; 27 Am. Law Reg. 739;
14 Am. & Eng. Ency. of Law, "Marshaling Assets;" *James*
v. *Hubbard*, 1 Paige's Ch. 228; *Milmine* v. *Bass*, 29 Fed. Rep.
632; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Clowes* v. *Dickinson*,
5 Johns. Ch. 235; 9 Cow. 240; *Campbell* v. *Carter*, 14 Ill. 286;
*Young* v. *Morgan*, 89 id. 200.

GILBERT & FELL, for appellees:

In order to authorize marshaling of securities the
party seeking the relief must have an existing lien on or
interest in a fund which is subject, in common with an-
other fund, to a paramount liability.  1 Story's Eq. Jur.
sec. 633.

The doctrine of marshaling securities will not be ap-
plied where it will operate to the prejudice of the party
entitled to the double fund.  *Heidelbach* v. *Fenton*, 79 Ill.
App. 357.

The payee of a check or draft acquires no interest in the funds in the drawee bank before notice is given to the latter of the drawing and delivery of the check or draft, and the manner of giving this notice must be by presentation of the check or draft to the bank for payment.    *Munn* v. *Burch,* 25 Ill. 21; *Greenebaum* v. *Bank,* 70 Ill. App. 407; *Rouse* v. *Calvin,* 76 id. 362; *Myers* v. *Bank,* 27 id. 254; *Pabst Brewing Co.* v. *Reeves,* 42 id. 154; *Niblack* v. *Bank,* 169 Ill. 517; *Gage Hotel Co.* v. *Bank,* 171 id. 531; *Bank* v. *Jones,* 137 id. 634; *Fourth Nat. Bank* v. *City Nat. Bank,* 68 id. 398; *Northern Trust Co.* v. *Rogers,* 60 Minn. 208; *Laclede Bank* v. *Schuler,* 120 U. S. 511; Morse on Banks and Banking, (3d ed.) sec. 505; Daniel on Neg. Inst. (4th ed.) secs. 1638, 1643, 1644.

Where a bank holds a demand note, or a note past due, it has the right to charge such obligation up against the maker's deposit account; and if it does so before a check or draft drawn by the depositor is presented, it will be entitled to hold the deposit against any check or draft afterwards presented.    *Niblack* v. *Bank,* 169 Ill. 517; *Myers* v. *Bank,* 27 Ill. App. 254; *Bank* v. *Kelsay,* 54 id. 660.

The certificate of deposit involved in this case is, in effect, a demand promissory note.    *Hunt* v. *Divine,* 37 Ill. 137; *Tripp* v. *Curtenius,* 36 Mich. 494.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

It is insisted by the appellant that by the execution and delivery of its check for $10,000 against the deposit account of the Fort Dearborn National Bank, the First National Bank of Helena assigned and transferred to the appellant, from that deposit account, an amount sufficient to pay the check on September 1, 1896, the time at which it was drawn, and as sustaining this contention appellant cites *National Bank of America* v. *Indiana Banking Co.* 114 Ill. 483, *Abt* v. *American Trust and Savings Bank,* 159 id. 467, and *Gage Hotel Co.* v. *Union Nat. Bank,* 171 id. 531.

The principle is clearly established by the foregoing and other authorities in this State, that the check of a depositor upon his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for, and the banker becomes the holder of the money for the use of the holder of the check, and is bound to account to him for the amount thereof, provided the party drawing the check has funds to that amount on deposit, subject to his check, at the time the same is presented. (*Munn* v. *Burch*, 25 Ill. 21.) The check operates as an absolute assignment of the fund on which it is drawn, from the time it is delivered, as between the drawer and the payee, and the bank is bound as soon as the check is presented, and whatever sum stands upon the books to the credit of the depositor at the time of such presentation is absolutely assigned to the holder of the check. (*Bickford* v. *First Nat. Bank of Chicago*, 42 Ill. 238; *Brown* v. *Leckie*, 43 id. 497; *Fourth Nat. Bank* v. *City Nat. Bank*, 68 id. 398; *Union Nat. Bank* v. *Oceana County Bank*, 80 id. 212; *Metropolitan Nat. Bank of Chicago* v. *Jones*, 137 id. 634; *Niblack* v. *Park Nat. Bank*, 169 id. 517.) And the relation existing between the drawer, the check-holder and the banker becomes such, when there are sufficient funds on deposit to meet the check at the time of presentation, that, because such funds were appropriated at the time of the drawing of the check, the contract to be implied between the depositor, the banker and the check-holder is, that the check-holder, whoever he may be, may have his action and recover against the bank the amount, *pro tanto*, of the check. (*Gage Hotel Co.* v. *Union Nat. Bank, supra.*) In the latter case it was said (p. 536): "If the funds are in the bank when the check is drawn, the drawing is an appropriation, as between the drawer and the payee, of the sum of money named in the check, which is to lie in the bank until called for by a presentation of the check. It is true that in such a case there is no privity between the bank and the check-holder until presentment,

and that priority in drawing a check does not give priority of right to the fund as against the banker, but that such priority of right is determined by the order of presentation." It was held in *Niblack* v. *Park Nat. Bank of Chicago, supra* (p. 521): "It is also the law, where a bank holds a demand note, or a note past due, it has the right to charge such obligation up against the maker's deposit account, and if it does so before a check drawn by the depositor is presented for payment, it will be entitled to hold the deposit against any check afterwards presented."

In this case, on the 4th of September,—at least one day before the presentment of the check for payment,— the Chicago bank transferred the account, and by proper entries on its books credited the Helena bank with all the money held by it to the credit of the latter bank, which credit was made on a certificate of deposit, which was, in effect, a demand note. (*Hunt* v. *Devine*, 37 Ill. 137; *Tripp* v. *Curtenius*, 36 Mich. 494.) Appropriating the deposit fund in good faith, in pursuance of strict legal rights, for the purpose of protecting its own interests, and without notice of the appropriation of the money by drawing the check in favor of appellant, was not a wrongful act but one authorized by law, and absolutely transferred the legal and equitable right to the fund so deposited to the Fort Dearborn National Bank, the check not having been presented to it nor it having any notice of the same until the day after the transfer of the account. Under the recognized rule in this State there was between the Helena bank and the payee of the check an absolute assignment of $10,000 then on deposit with the Fort Dearborn National Bank, and no right existed in the Helena bank to change that deposit in any way or to so draw against it as to prevent the assignment, *pro tanto*, from being carried out. It is clear, the holder of the check had an interest in the fund so assigned, whilst it is equally clear that until the bank had notice it could pay subsequently drawn checks, or credit the amount of the deposit on any over-

due paper of its own. The equitable interest of the check-holder, however, remained the same.

It is a principle controlling the marshaling of securities, that where one creditor can resort to two funds and another to one of them only, the former must seek satisfaction out of that fund which the latter cannot touch. In Pomeroy on Equitable Jurisprudence (sec. 1414) it is said: "If, therefore, the prior creditor resorts to the doubly charged fund, the subsequent creditor will be substituted, as far as possible, to his rights. These rules must be taken with the modifications and exceptions that in their application the paramount encumbrancer shall not be delayed or inconvenienced in the collection of his debt, * * * that the rights of third parties shall not be prejudiced, and that the parties themselves are creditors of the same debtor." Numerous authorities are there cited as sustaining these propositions.

The principle of marshaling securities has been frequently applied to cases where there is an equitable interest or lien on collateral securities. In Colebrooke on Collateral Securities it is said (sec. 98): "By this rule, a creditor having a lien upon two funds for the payment of his debt and a subsequent creditor a lien upon one, only, of such funds, the former is required to exhaust his remedy against the fund which is especially for his security before resorting to that in which the subsequent creditor is interested. The rule, however, is never enforced in cases where it would cause an injury or damage to the creditor holding such liens upon separate funds or would work injustice to other parties. The rule was applied where a merchant had forwarded his note to a broker for sale, and the proceeds, less commissions, remitted. The broker fraudulently pledged the note, with other collaterals, to a bank to secure a loan to himself, of which the merchant received nothing. The merchant, learning of the misappropriation, gave notice to the bank and claimed to be subrogated to any surplus arising from

other securities held by it after the payment of the loan. Subsequently, and before the maturity of the loan, the note fell due and was paid without suit. Upon realizing the other securities the bank held a surplus in its hands. The merchant was entitled to be paid from such surplus, his voluntary payment not affecting his right of recovery."

This principle is sustained by *Farwell* v. *Importers' Nat. Bank*, 90 N. Y. 483. In that case the merchant had an equitable interest in collaterals, which, with his note, were put up to secure the loan to the broker by reason of the broker's misappropriation of the note, and is not equitably a stronger case for the marshaling of assets than where, as in this case, the bank had as security for its certificate of deposit and for its account due, notes aggregating about $30,000 and a deposit of over $20,000. Here, $10,000 of the amount deposited having been equitably assigned to the complainant, by reason of its appropriation by the bank before receiving notice of the drawing of the check the complainant was deprived of all interest in the deposit, and the Helena bank, or its receiver, who could have no greater interest than the bank itself, received the benefit of the application of the deposit by the Fort Dearborn National Bank on its certificate of deposit, and the complainant, as holder of the check, had such an interest in the sum deposited that he should be subrogated, as against the Helena bank or its receiver, to the notes held by the Fort Dearborn National Bank after the payment of the residue due the latter bank; and this principle of subrogation is applicable because, by reason of the appropriation of the fund by the bank with which the deposit was made, to the payment of a debt for which it held two distinct character of securities, one of those securities is, to an extent sufficient to pay the complainant, released from liability so far as the Fort Dearborn National Bank was concerned, and the latter bank had lawfully used $10,000 of a deposit there-

tofore assigned to the complainant by the Helena bank. 2 Beach on Modern Eq. Jur. sec. 784; 1 Story's Eq. Jur. secs. 635, 636.

It is a maxim of equity that "equity regards and treats that as done which in good conscience ought to be done," and in writing of this maxim Mr. Pomeroy, in his work on Equity Jurisprudence, (sec. 365,) says: "The principle involves the notion of an equitable obligation existing from some cause; of a present relation of equitable right and duty subsisting between two parties; a right held by one party, from whatever cause arising, that the other should do some act, and the corresponding duty,—the *ought*,—resting upon the latter to do such act. Equity does not regard and treat as done what might be done or what could be done, but only what ought to be done. Nor does the principle operate in favor of every person, no matter what may be his situation and relations, but only in favor of him who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved." A court of equity acting upon this fundamental principle may go beneath the appearance of things and deal with the real facts, where the interest is a purely equitable one, recognized by courts of equity alone. When, therefore, a prior encumbrancer of two funds, by his election of remedies, deprives a junior encumbrancer who has a lien upon one of the funds only, from reaching the particular fund on which he has a lien, the junior encumbrancer, to the extent of his lien, should be substituted to the lien of the paramount encumbrancer upon the other fund bound, as against the debtor and all claiming under him by lien or title subsequent in time. (*Gibson* v. *Seagrim*, 20 Beav. 614; *James* v. *Hubbard*, 1 Paige's Ch. 228; *Clowes* v. *Dickinson*, 5 Johns. Ch. 235.) Under a bill for marshaling securities, relief may be had in that character of case. The Fort Dearborn National Bank had a right to apply the deposit in payment of the indebtedness *pro tanto* to the extent of

the deposit, and deprive the check-holder of any part of that deposit as a fund assigned to him, but he had such an equitable interest in that fund by reason of its assignment by the check, that he is entitled to be subrogated to the extent of his check, with interest thereon from the time it was presented, to the fund to be derived from the collection or sale of the collateral securities held by the Fort Dearborn National Bank as security on its certificate of deposit and bank account, after the residue is paid to it.

The superior court erred in decreeing that the Fort Dearborn National Bank should deliver to the receiver of the First National Bank of Helena the collateral notes, but did not err in decreeing that from the proceeds of the same there should first be paid to the Fort Dearborn National Bank the amount, including interest, due it, and to pay to Wyman the amount due on said check and interest, and to retain the balance as part of the assets of the First National Bank of Helena; nor was there error in the decree of the superior court in directing if there was not enough to pay Wyman in full, the amount unpaid should be allowed as a claim against said First National Bank of Helena, to be paid in due course of administration of its assets, and that the receiver pay the costs. It was error in the Appellate Court for the First District to reverse the entire decree of the superior court and remand the cause, with directions to dismiss the bill.

So far as the superior court decreed that the Fort Dearborn National Bank deliver to the receiver of the First National Bank of Helena the collateral notes, its decree is reversed, but in all other respects the decree of said court is affirmed. For the error of the Appellate Court for the First District in reversing the entire case and remanding with directions to dismiss the bill, its decree is reversed and the cause is remanded.

*Reversed and remanded.*