12849

HAMPTON LOAN & EXCHANGE BANK v. LIGHTSEY, REC'R

(152 S. E., 425)

October, 1928.

*Mr. J. W. Manuel,* for appellant,

*Mr. Randolph Murdaugh,* for respondent,

May 7, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action by the Hampton Loan & Exchange Bank of Hampton against the receiver of the Bank of Hampton, claiming to be subrogated to the rights of the Citizens' & Southern Bank of Savannah in certain collateral which had been held by the last-named bank to secure certain obligations of the Bank of Hampton, and which had been turned over to the receiver of the Bank of Hampton under the circumstances hereinafter detailed.

For convenience and to avoid confusion, the Hampton Loan & Exchange Bank will be referred to as the "Loan & Exchange Bank," the Bank of Hampton as the "Hampton Bank," and the Citizens' and Southern Bank as the "Savannah Bank."

The facts appear to be as follows:

In 1926 there were two banks in Hampton, the Loan & Exchange Bank and the Hampton Bank; in the spring of that year the Hampton Bank negotiated a loan with the Savannah Bank for $15,000, and gave its notes therefor, secured by a pledge of customers' notes amounting to $28,-500.51. The notes of the Hampton Bank were due in the fall of 1926. They contained a provision allowing the Savannah Bank to apply as a credit upon them any balance that the Hampton Bank might have to its credit with the Savannah Bank, or to any other indebtedness that might be owing. The proceeds of the notes were passed to the credit of the Hampton Bank.

On July 9, 1926, the Loan & Exchange Bank (the plaintiff herein) presented to the Hampton Bank for payment certain checks drawn by depositors upon the Hampton Bank

against their respective accounts, aggregating $1,698.58. At that time the Hampton Bank had ample funds with which to meet these checks, and, if the Loan & Exchange Bank had insisted upon the cash, they would have been paid. It, however, accepted in lieu of the cash the check of the Hampton Bank upon its account with the Savannah Bank, for the amount $1,698.58, which, if promptly presented, would have been paid, as the Savannah Bank had on deposit to the credit of the Hampton Bank on July 10th $5,613.77, and on July 12th (Monday), $7,746.98. The Hampton Bank marked the presented checks "paid," charged them to the several accounts of the drawers, and credited the Savannah Bank with the amount of the check drawn upon it. The Loan & Exchange Bank transmitted the check of the Hampton Bank upon the Savannah Bank for collection to the South Carolina National Bank of Columbia, which transmitted it directly to the Savannah Bank; the check reaching the Savannah Bank Monday morning, July 12th.

The Hampton Bank was open for business on Friday the 9th and Saturday the 10th, but failed to open its doors on Monday the 12th.

Although the Savannah Bank received the check on Monday morning, it did not immediately remit to the Columbia Bank, although it then had upon deposit to the credit of the Hampton Bank more than $7,000. Later in the day the Savannah Bank learned of the closing of the Hampton Bank, refused payment of the check, and applied the credit balance of $7,746.98 to the notes of the Hampton Bank, although it appears that they were not then past due.

On August 6, 1926, the defendant, Lightsey, was appointed receiver of the Hampton Bank, and on August 10th he paid to the Savannah Bank the balance unpaid, but not due upon the notes, and received from the Savannah Bank the $28,000 of notes which had been pledged as security with that bank as stated. .

The Loan & Exchange Bank now claims that it is entitled to be subrogated to the rights of the Savannah Bank in this collateral to the extent of the amount of the check which the Hampton Bank had drawn upon the Savannah Bank and delivered to it, upon the ground that, when the Savannah Bank applied the whole of the credit balance of $7,746.98 to the notes which it held against the Hampton Bank, it had recourse to two funds, the credit balance and the collateral, while the Loan & Exchange Bank had recourse only upon the credit balance, and that it had accounted to its customers for the checks which it had received for collection.

The case was tried by his Honor, Judge Grimball, without a jury, upon testimony taken before him in open Court, and on October 31, 1928, he filed a decree refusing the relief of subrogation. From it the plaintiff has appealed.

There can be no doubt, under the evidence, that for its debt of $15,000 against the Hampton Bank, evidenced by its notes, the Savannah Bank had recourse to *two* sources of reimbursement, the $28,000 of collateral, and, *pro tanto,* the balance upon deposit with it to the credit of the Hampton Bank, of $7,746.98. It is equally free from doubt that for its debt of $1,698.58 against the Hampton Bank, evidenced by the check upon the Savannah Bank which the Hampton Bank had given to it, the Loan & Exchange Bank had recourse to *only one* source of reimbursement, the balance upon deposit with the Savannah Bank to the credit of the Hampton Bank of $7,746.98. It is equally free from doubt that upon the check of $1,698.58 the Hampton Bank was the primary obligor and the Loan & Exchange Bank the secondary. It is equally free from doubt that the Loan & Exchange Bank has discharged its secondary obligation by accounting to its customers for the checks which it had received for collection and which it surrendered to the Hampton Bank in exchange for the check of $1,698.58 when it should have accepted money only. This was irregular, technically, but the irregularity served only to fix liability upon the Loan &

Exchange Bank to its customers for the checks received by it for collection.

It would appear, therefore, that the Loan & Exchange Bank, upon the face of the transaction, has presented a perfect example of the right of subrogation. When the Loan & Exchange Bank accepted the check of the Hampton Bank upon the Savannah Bank, in payment of the checks of its customers surrendered by it to the Hampton Bank, the customers were the persons directly interested in the cashing of that check; they became practically the real debtors of the Hampton Bank, the Loan & Exchange Bank occupying the position of a trustee for them. The customers had the right to insist that the Savannah Bank should first exhaust the collateral before going upon the credit balance, which was their only protection, and the Loan & Exchange Bank, having paid off the obligation it had incurred to the customers, became the assignee of such right as the customers had. If there had been no receivership, the right of the Loan & Exchange Bank to force the Savannah Bank upon the collateral would have been unquestionable as against the Hampton Bank; the receiver can have no higher right than the Hampton Bank had, and takes over the assets of the bank with its concomitant burdens.

The elements of subrogation are thus defined in the case of *Enterprise Bank v. Federal Land Bank,* 139 S. C., 397, 138 S. E., 146: (1) That the party claiming it shall have paid the debt; (2) that he was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) that he was secondarily liable for the debt or the discharge of the lien; (4) that no injustice will be done to the other party by the allowance of the equity. All of them appear to be present in aid of the claim of the Loan & Exchange Bank.

It has been suggested that the paramount equity is in favor of the creditors of what has developed into an insolvent bank. The declaration of the Court in the *Livingstain*

*case,* 77 S. C., 307, 57 S. E., 182, 184, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568, has received the repeated approval of this Court: "No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."

This principle cannot be invoked in opposition to the claim of the Loan & Exchange Bank for subrogation for two reasons: (1) It does not appear that the Hampton Bank was insolvent at the time the right of subrogation arose; (2) the right having matured before the receivership, the receiver took the assets of the bank subject to it.

Much reliance is placed by the respondent upon the *Livingstain case, supra.* That case is so very different from the case at bar that it is naturally of no controlling force in the determination of the present issue. In it the facts were these:

A Charleston bank had given its note to a New York bank for $5,000, secured by a deposit of certain collateral. The note provided that, upon the failure of the Charleston bank, the New York bank had the right to accelerate the maturity of the note immediately, and apply to it what funds the Charleston bank had at that time on deposit with the New York bank. The claimant was a depositor in the Charleston bank, and wished to withdraw his deposit. He was given in exchange for his check a check upon the New York bank. The Charleston bank closed its doors on the same day that the check was given. The check was presented by the depositor to the New York bank for payment two days later. It was refused, for the reason that the Charleston bank had failed, and that the New York bank, exercising its right under the note, had applied the credit balance of the Charleston bank's deposit account with it to the payment of the note, which application paid it in full, leaving a small balance. The collateral and the credit balance were turned over by the New York bank to the receivers of the Charles-

ton bank. The depositor who had received the check of the Charleston bank upon the New York bank claimed the right to be subrogated to the rights of the New York bank in the collateral turned over to the receivers. His claim was denied upon several grounds, none of which apply to the conditions prevailing in the present case.

In the first place, it was conceded that the Charleston bank was insolvent at the time it gave its check on the New York bank to the depositor claimant, the Court holding: 'We think, with the Master, that subrogation should not be allowed, because it would be prejudical to the other depositors of the Columbian [Charleston] Bank, *whose equitable right to equal distribution of the assets among creditors is clearly superior to any claim set up by the petitioners to the collateral.*"

It is difficult to see how this principle can be made applicable to the present case when the Hampton Bank was not insolvent at the time it gave the check to the Loan & Exchange Bank, having on hand in its bank ample funds to pay the checks delivered to it by the Loan & Exchange Bank, and having on deposit with the Savannah Bank sufficient funds to meet the check, and when the right of subrogation had matured before the insolvency and receivership.

Another difference is that both the agreement in the note permitting the New York bank to apply the deposit to the note and the check which the Charleston bank gave to the claimant are treated as assignments of the deposit account with the New York bank. Under the Negotiable Instruments Law (Civ. Code, 1922, §§ 3652–3847) neither position is sustainable now. The decision rested mainly upon the question of the relative priorities of these so-called assignments.

Still another is that the application of the deposit by the New York bank was made before it had notice of the check drawn by the Charleston bank.

The following statement in the opinion indicates that but for the question of priority of assignments the right of sub-

rogation would have existed: "Although this assignment became ineffective because of the superior claim of the Bank of Commerce, yet when that bank paid the debt owing to it with a fund on which the petitioners had a junior lien or claim, as against the Columbian Bank and the Commercial Bank, petitioners would have ordinarily a right, on the principle of subrogation, to be substituted for the Commercial Bank as pledgee of any collaterals held by it. This general principle is so obvious and well recognized that it requires no extended discussion"—citing cases.

The case is very different from another angle, upon which much stress is laid in the opinion. The Court, discussing the case of *Wyman v. Bank*, 181 Ill., 279, 54 N. E., 946, 48 L. R. A., 566, 72 Am. St. Rep., 259, and differentiating it, says: "But the report of that case does not show the important fact, which here appears, that the check holder took the check from an insolvent corporation in payment of its debt due him as a depositor, and not for money paid at the time."

And differentiating it from the case of *Garvin v. Bank*, 7 S. C., 266: "There the check holders were held entitled to subrogation after the payment of the bank's debt from the bonds deposited as security, but the contract between the Royal Bank of Liverpool and the State Bank which issued the checks expressly provided for overdrafts, while here overdrafts were not to be allowed. The vital distinction, however, is in that case the drafts were made when the bank was solvent, and it does not appear they were issued for a debt, the payment of which would have operated to prefer the payee to other creditors of an insolvent."

In the case at bar it does not appear that the Hampton Bank was insolvent at the time the check was delivered to the Loan & Exchange Bank; nor does it appear that it was issued in payment of a debt which the Hampton Bank owed to the Loan & Exchange Bank. On the contrary, it was practically a cash transaction, a substitute for cash, the benefit of which the Hampton Bank immediately received by

lessening its liability to its depositors whose checks were charged up to them and for which the bank received immediate credit.

In the *Livingstain case* the opinion declares what is very pertinent to sustain the claim of the Loan & Exchange Bank: "Had the·checks been issued for cash paid into the bank or before insolvency, the other depositors could have interposed no countervailing equity, and the petitioners would have been entitled to subrogation."

If the theory of assignment *pro tanto,* declared in the *Livingstain case,* could be made applicable here, it is clear that, as the check on the Savannah Bank was given on the 9th, and the application of the deposits to the note was not made until the 12th, the equity of the Loan & Exchange Bank would be superior.

In the *Livingstain case* the argument was forcibly expressed in the opinion that a Court of equity, standing by when the claimant attempted to withdraw his deposit by accepting a check upon the New York bank when the Charles-·ton bank was insolvent, would, for the protection of the other depositors and creditors of the bank, have enjoined such a diversion of the assets of the bank, and would not later confirm an act which at the time it would have forbidden. Tested by this rule, it seems clear that, when the Hampton Bank proposed to give the Loan & Exchange Bank a check upon the Savannah Bank for the amount of the checks presented for payment, when it had ample funds in its bank to pay the checks charged to its depositors and ample funds in the Savannah Bank to meet the check, and was not shown to have been insolvent, a Court of equity would not have interfered to prevent it.

The case of *Garvin v. Bank,* 7 S. C., 266, appears conclusive of the pending issue. In it the facts were these: A Charleston bank opened a line of credit with a Liverpool bank, and pledged as security for all overdrafts certain bonds of the State of South Carolina; this was in 1861. The

Charleston bank drew certain bills of exchange upon the Liverpool bank later in 1861 in favor of certain persons, presumably, who wished to purchase Liverpool exchange. On account of the war, doubtless, the bills were not presented until 1864, and payment was refused upon the ground that the Charleston bank, which had become insolvent, was largely overdrawn; the Liverpool bank proceeded to realize upon its collateral, and a contest was precipitated between the Liverpool bank and certain creditors of the Charleston bank; the latter contending that the collateral should be surrendered for the benefit of all of the creditors of the Charleston bank. A contest was also precipitated between the general creditors of the Charleston bank and the holders of the bills of exchange referred to; the latter contending that in the fund remaining after reimbursement of the Liverpool bank they were entitled to priority over the general creditors. The first contest was decided in favor of the Liverpool bank, and the latter in favor of the holders of the bills of exchange.

The case of *Wyman v. Bank,* 181 Ill., 279, 54 N. E., 946, 48 L. R. A., 565, 72 Am. St. Rep., 259, strongly supports the contention of the Loan & Exchange Bank in the case at bar. There a bank of Helena, Mont., had a large deposit to their credit in a Chicago bank; it was also largely indebted to the Chicago bank upon an obligation which was secured by ample collateral. On September 1st the Helena bank issued to the plaintiff a check on the Chicago bank for a large amount; on the 4th the Helena bank was closed; on the 5th the check was presented and payment refused. The Chicago bank, without notice of the check, had applied the deposit of the Helena bank to its obligation. The plaintiff then made claim that under the two-fund doctrine he was entitled to be subrogated to the claim of the Chicago bank in the collateral, and his claim was sustained.

The *Livingstain case* came again before the Court under the title of *Ex parte Berger,* 81 S. C., 244, 62 S. E., 249, 22

L. R. A. (N. S.), 445, in which the circumstances of the withdrawal by the depositor were more particularly detailed. It appeared there that the depositor, being apprehensive of the solvency of the bank, which at that time was actually insolvent, drew a check covering his entire deposit account, and was paid in cash. Without leaving the bank he exchanged the cash for a check upon the New York bank, which under the circumstances detailed in the reference above to the appeal in 77 S. C. was turned down. The Court held that there were two distinct transactions, the withdrawal of the deposit and the actual payment of the cash for the New York check, and that the claimant was entitled to subrogation in the collateral which had been held by the New York bank, notwithstanding the actual insolvency of the bank at the time and the claimant's well-founded apprehension of the fact. The decision was based upon the fact that the bank received the cash for the check in the orderly course of business, and that the claimant came within the exception stated in the first appeal. The decision in the first appeal was based upon the theory of the payment of the debt while insolvent giving a preference to the claimant; that in the second appeal upon a contrary theory.

If the Hampton Bank, instead of issuing the check on the Savannah Bank, had paid the Loan & Exchange Bank cash for the surrendered checks of its depositors, while the Hampton Bank was open and doing business, we apprehend that the creditors of the bank which thereafter closed would have had no ground of complaint. The transaction was equivalent to that, and we think should be regarded as equally free from criticism, so far as prejudice to the interest of the other creditors of the Hampton Bank resulting from the subrogation is concerned.

The judgment of this Court is that the decree appealed from be reversed, and that the case be remanded to the Circuit Court for further proceedings consistent with the conclusions herein announced.

234

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.