13373

RAILWAY EXPRESS AGENCY *ET AL.* v. BETHEA

(168 S. E., 637)

*Messrs. Gibson & Muller,* for appellant,

*Mr. J. P. Lane,* for respondent,

March 28, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was brought by J. L. Bridges and Railway Express Agency against John C. Bethea, receiver or liquidating agent of the defunct Bank of Dillon, for the purpose of having certain drafts issued by the bank declared entitled to preferential payment.

On November 5, 1928, Bridges, an agent for the Express Agency, purchased from the bank, with cash and checks he

had collected as such agent, exchange drawn on the American Trust Company of Charlotte, N. C., in the sum of $220.00, payable to the Express Agency, for the transmission to it of its money. The draft was promptly presented to the trust company, but payment was refused because of the insolvency of the Dillon Bank. In like manner, Bridges, on November 6, 1928, purchased from the Dillon Bank exchange drawn on the National Loan & Exchange Bank of Columbia, S. C., in the sum of $272.00, and on November 7, 1928, purchased exchange on the American Trust Company in the sum of $500.00. These drafts also were promptly presented, and payment was likewise refused.

On November 7, 1928, the Dillon Bank closed its doors, and subsequently Bethea was appointed its receiver or liquidating agent. He received in actual cash from that bank more than $13,000.00; and there was returned to him by the Charlotte Bank approximately $4,700.00, and by the Columbia Bank approximately $3,600.00, of the Dillon Bank deposits. No question is made that each of the two correspondent banks had on hand sufficient funds of the Dillon Bank to pay the drafts drawn on it, or that the Dillon Bank had on hand sufficient cash to pay the checks presented by Bridges; the correspondent banks also held securities of the Dillon Bank.

The case was heard by Judge E. C. Dennis, who ordered that the plaintiffs have judgment against the defendant for $992.00, the aggregate amount of the three drafts in question, and "that such claim be a preferred claim and entitled to payment in full." From this order defendant appeals.

The holding in the Court below was based upon *Hampton Loan & Exchange Bank v. W. F. Lightsey, Receiver of the Bank of Hampton*, 155 S. C., 222, 152 S. E., 425, 427. Appellant contends that the decision in that case is not applicable to the facts in the case at bar, for the reason that the holding there was based, in part, upon a finding of fact that, at the time of the issuance of the check on the Bank of Savannah by the (afterwards closed) Hampton Bank to

the Loan & Exchange Bank, the Hampton Bank was not insolvent, while plaintiff here alleges in his complaint that the Dillon Bank was insolvent when the drafts were purchased and would be thereby estopped to deny such insolvency, and that the issues should therefore be resolved upon the theory that the bank was insolvent at that time.

It is true that in the *Hampton Bank case,* Mr. Justice Cothran, speaking for the Court, in discussing the rule of equity which "requires the assets of an insolvent corporation to be distributed ratably among creditors," advances as one reason why this principle could not be invoked in opposition to the claim of the Loan & Exchange Bank for subrogation that "It does not appear that the Hampton Bank was insolvent at the time the right of subrogation arose." But in the same opinion the Court cited, as sustaining its views, *Ex parte Berger,* 81 S. C., 244, 62 S. E., 249, 22 L. R. A. (N. S.), 445, in which the bank was clearly insolvent when its check upon the New York Bank was issued, and the decision in favor of subrogation was based upon the fact that the bank received the cash for the check "in the orderly course of business," and that the claimant came within the double-contingency rule announced in the *Livingstain case,* 77 S. C., 305, 57 S. E., 182, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568: "Had the checks been issued for cash paid into the bank or before insolvency, the other depositors could have interposed no countervailing equity, and the petitioners [purchasers of the checks] would have been entitled to subrogation." And so, in the *Hampton Bank case,* the decision is predicated upon the fact that the issuing bank was "open and doing business," rather than upon its solvency, at the time the check was issued, and an extension by the Court of the rule applicable to checks issued for "cash," so as to include checks issued for checks drawn on the issuing bank, which could have been collected before the purchase of exchange was made; the parties to the transaction in such case merely waiving the actual delivery and redelivery of cash.

234

Appellants also contend that respondents are not entitled to preference, for the reason, that they "were in the habit of almost daily transmitting funds upon the credit of the bank, thus demonstrating the fact the relation of creditor and debtor existed." The relations and rights of the issuing bank, the purchaser of a draft and the drawee bank, in cases of this kind, have already been determined by this Court, and we cannot see how the fact that the purchase of the drafts in question was in accordance with a custom or habit can have any bearing on the matter.

The case at bar clearly comes within the rule followed in the *Hampton Bank case;* and, indeed, for the reason that at least part of the money used in purchasing the drafts was cash is a stronger one for the purchaser than that case.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES CARTER and BONHAM concur.