13910

SOUTH CAROLINA STATE BANK v. CITIZENS' BANK

(176 S. E., 346)

*Mr. L. D. Lide,* for appellant,

*Messrs. Gibson & Muller,* for respondent,

September 27, 1934.

The opinion of the Court was delivered by MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE.

In the consideration of this appeal we are forcibly reminded of a prophecy of the late Thomas P. Cothran, a Justice of this Court, made in 1926, in the case of *Citizens' Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510, as follows:

"This Court must take judicial notice of the unprecedented clashes of financial institutions and private enterprises, recently occurring, which have shocked the State,. and must anticipate in their wake the presentation of innumerable problems for its determination. I regard this, therefore, as a most critical period in the judicial history of this State, and feel the deepest responsibility in deciding the questions, as they arise, upon the most painstaking consideration, lest an erroneous decision will be 'drawn into a precedent' fraught with disaster."

Many difficult questions have arisen and have been decided since the utterance of that prophecy, all going to the establishment of its complete fulfillment. It is recognized by both bench and bar that the decisions in various cases have not been in thorough accord, not only with the decisions of other states, but at times with the decisions as rendered by this very Court. The vast difference in the facts of the various cases has on occasions ·caused the principles of law to become obscure, and confusion has been the inevitable result. ·

In this opinion it will not be attempted to review all of the bank cases which have been decided in the past few years, but the effort will be made to review only those bearing upon the situation as is developed by this case, the facts of which are simple and easy of comprehension, but the law apparently full of traps and pitfalls.

L. B. Rogers had some cotton seed and meal at Latta, S. C., which he sold to Swift & Co. The representative of Swift paid for the seed and meal by means of a "seed ticket" for $1,379.24; this seed ticket being to all intents and purposes a draft on Swift & Co. of Columbia and drawn through the Farmers' & Merchants' Bank of Latta. Rogers went to the Latta bank to cash his seed ticket, and was told by the cashier that the bank did not have sufficient funds on hand for that purpose. Rogers walked out of the bank and was followed by the assistant cashier who offered him $100.00 in cash and a cashier's check for the balance,

$1,279.24. This arrangement was agreed to, the $100.00 in cash was paid, and Rogers stated, "So I swapped him the ticket for a cashier's check." Rogers then took the cashier's check to Dillon and deposited it with the bank there for collection. The bank at Latta was closed before its cashier's check was paid. It only remains to be said that the seed ticket was forwarded to Columbia on November 19, 1931, to the National Loan & Exchange Bank, and that the same was paid by Swift & Co. on November 20, 1931. It is important here to note that the record does not show what became of the money collected from Swift & Co. by the Columbia bank.

The Farmers' & Merchants' Bank at Latta, the bank which issued its cashier's check to Rogers, closed its doors on November 21st, at the end of the business day, and Citizens' Bank was appointed receiver. The South Carolina State Bank filed claim against the receiver for $1,279.24 on behalf of Rogers as a preferred claim. Testimony was taken before the Probate Judge, and his decision was duly rendered denying a preference. Upon appeal to the Circuit Court, the judgment of the Probate Judge was reversed, and Rogers' claim was declared entitled to preferential payment. From this ruling the receiver, on behalf of all creditors, has appealed upon exceptions which properly present the subject for decision.

The similarity of this case to the case of *Ex parte Sanders*, 168 S. C., 323, 167 S. E., 154, is shown below in the form of parallel columns:

| *The Sanders Case* | *The Rogers Case* |
|---|---|
| 1. Sanders presented to the bank to be cashed a check of one of its depositors which was good. | Rogers presented to the bank to be cashed a seed ticket which was good. |
| 2. The bank gave Sanders a draft on a Charleston bank and some cash. | The bank gave Rogers a cashier's check on itself and some cash. |

3. The check was paid by charging the account of the depositor who issued the check.

The seed ticket was paid by Swift & Co. upon presentation.

4. The bank failed, and the draft on Charleston was not paid.

The bank failed, and the cashier's check was not paid.

5. Sanders was not, and never intended to be, a depositor in the bank.

Rogers was not, and never intended to be, a depositor in the bank.

6. Sanders brought suit upon his claim, alleging a preference.

Rogers brought suit upon his claim, alleging a preference.

7. The Circuit Judge held that Sanders was not a preferred creditor.

The Circuit Judge held that Rogers was a preferred creditor.

8. Sanders appealed to this Court from the ruling of the Circuit Judge.

The receiver appealed to this Court from the ruling of the Circuit Judge.

9. The judgment was affirmed and Sanders is held to be a common creditor.

What?

Practically the only difference between the two cases is that Sanders accepted a draft and Rogers accepted a cashier's check. As between the two, it would appear that Sanders occupied the stronger position. The draft on the Charleston bank was perfectly good and would have been paid if presented in time. The cashier's check apparently was never good. Just why Rogers would accept a cashier's check for the amount of the seed ticket on a bank which did not have sufficient funds on hand to pay the amount we are at a loss to understand. However, it seems that he was willing to make the swap and must accept the consequences even as did Sanders, who failed to present his draft in time.

In the case of *Fant v. Easley Loan & Trust Co.,* 170 S. C., 61, 169 S. E., 659, the South Carolina National Bank and the First National Bank of Blakeley, Ga., claimed pref-

erences in the assets of the closed Easley Loan & Trust Company upon the ground that the Easley bank had sent them checks in payment of their items, which checks were dishonored, and that the checks were a legal assignment of the funds in the bank. The claims for preferences were denied. It is true that the preferences were claimed on the ground of legal assignment *pro tanto* of the funds in the bank which issued its checks, and this claim was denied under the provisions of the Negotiable Instruments Law (Code 1932, § 6752 *et seq.*) and the cases of *Citizens' Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510, and *Loan & Savings Bank v. Peurifoy,* 141 S. C., 318, 139 S. E., 783. However, if the claims could not be sustained upon the ground of equitable assignment, there was no other ground upon which they could rest; the question of their being a trust having been eliminated.

The cases relied upon in the opinion of Mr. Justice Carter as giving a preference will now be considered.

*Loan & Savings Bank v. Peurifoy, supra.* In this case a preference was allowed on the double ground that the relation of principal and agent existed and also that a trust *ex maleficio* had arisen, neither of which conditions exist in the present case.

*Hampton Loan & Exch. Bank v. Lightsey,* 155 S. C., 222, 152 S. E., 425. In this case the sole reason for the allowance of the preference was that the Hampton Bank by the payment of the draft had become subrogated to the rights of the Savannah bank, which bank was clearly entitled to payment in full. Not one of the four elements of subrogation, as outlined in that case, can be found in the present case.

*Ex parte Berger,* 81 S. C., 244, 62 S. E., 249, 22 L. R. A. (N. S.), 445. This case is based entirely on subrogation, is the basis for the decision in the *Lightsey case,* and contains no principle of law applicable to the case now under consideration.

Reviewing briefly some of the other so-called bank cases decided by this Court, we refer to the following:

*Railway Express Agency v. Bethea,* 165 S. C., 230, 163 S. E., 637. This case appears to be somewhat out of line with some of the other decided cases, unless it can be sustained under the principle that at the time Bridges, the agent of the plaintiff, purchased the drafts from the Bank of Dillon, the Bank of Dillon was insolvent. If insolvent, then the conduct of the bank may have been considered as a breach of trust *ex maleficio* and the preference allowed under the case of *Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. E., 239, and subsequent cases affirming that much-disputed and rather doubtful doctrine. The *Bethea case,* however, is not decided on that rule, but follows the *Lightsey case, supra,* on the ground of subrogation, although it appears to be conceded in the briefs filed herein by the attorneys for both parties that the doctrine of subrogation has no foundation in the *Bethea case.*

*Citizens' Bank v. Bradley, supra.* This case deals with several claims for preference, all of which were denied, but, as illustrative of the question now being considered, we refer to only one, the Seabrook claim. Mr. Seabrook, an attorney, collected a claim for one of his clients; the claim being paid by check on the Pinewood bank, where the drawer of the check had ample funds to protect it. Seabrook deposited the check to his credit in the Sumter bank. The check was cleared through the Richmond Clearing House Association and was sent direct to the Pinewood bank. There it was charged against the account of the drawer of the check and the Pinewood bank remitted to the Clearing House Association by its check on a bank in Columbia, which check, in the parlance of banks, was "no good." Upon the closing of the Pinewood bank, Seabrook filed his claim for a preference, but the claim was denied, and he was denominated a common creditor. It may not be out of place to say that his claim was denied upon the ground that the bank and Seabrook occupied the relation of debtor and creditor

after the collection of the check. This case was decided prior to the Act of March 28, 1930 (36 St. at Large, 1368), under the provisions of which the relation of principal and agent would have existed. Under the facts of the present case, there is nothing to bring it under the terms of the Act of 1930, and no claim is made relative thereto.

*Ex parte Town of Darlington,* 168 S. C., 242, 167 S. E., 412. This case is quite similar in principle to the one now under consideration. The Town of Darlington had on deposit with the Bank of Darlington more than $20,000.00. In order to pay a note of the town soon to be due in New York, the city treasurer drew the check of the town upon the bank for $20,000.00, and received from the bank its check or draft on the National City Bank of New York for a like sum. The Bank of Darlington had ample funds on deposit with the New York bank to protect its draft or check. Before the check cleared, the Bank of Darlington closed. Upon non-payment of the check, the town filed its claim for preferential payment upon the grounds that its deposit was of public funds and that the draft operated as an equitable assignment. Both grounds were overruled, and the town was relegated to the class of common creditors. Parallel columns could also be used as to the facts of this case. They are so similar to the case now being considered that it would be impossible to distinguish the applicable legal principles.

. *In re Loan & Savings Bank of York,* 170 S. C., 388, 170 S. E., 474. In order to complete a composition in bankruptcy, Messrs. Hart & Moss, attorneys, received from their client a check for $3,000.00, which they deposited to their credit in the Loan & Savings Bank of York. Upon giving their check to the Bank of York for a like sum, the bank executed its check on the Chase National Bank of New York for the same amount, payable to the clerk of the Federal Court. The check was not presented by the clerk, and the York bank failed. Claim for preference was made upon three grounds: The Act of 1930, the former decisions

of this Court, and that the check represented a debt due the United States. The Circuit Judge held that the claim was entitled to a preference, giving no reasons therefor, and on the appeal this Court reversed the Circuit Judge on all three grounds upon which the claim was based. The *Sanders case* and the *Darlington case,* both referred to above, were relied upon as authority for the reversal.

Referring again to the *Sanders case,* very few cases in this Court since *Citizens' Bank v. Heyward,* 135 S. C., 190, 133 S. E., 709, have encountered such a stormy passage. The principal obstruction was the dissenting opinion of the Chief Justice, concurred in by the writer of this opinion, but, since the cause has arrived safely in port, it is hoped by the writer hereof that this opinion will add strength to its moorings and will supply a third cable to the two heretofore furnished by the Chief Justice in the *Darlington case* and in the *Loan & Savings Bank of York case,* both above mentioned.

The Circuit Judge filed his decree reversing the order of the Probate Judge, in the present case, and based his ruling on two grounds: First, that the proceeds of the draft went into the hands of the receiver and increased the assets; and, second, that it would be inequitable to deny the preference. Both of these conditions might have been decisive of practically every case referred to in this opinion. In addition, we fail to find in the record any direct testimony relative to the disposition of the proceeds of the seed ticket or that the proceeds ever went to the receiver. It is surmised, on one side, that the receiver received the proceeds and, on the other, that the proceeds were retained by the Columbia bank to apply on an indebtedness due it by the insolvent bank. It would have been a very easy matter for the plaintiff, the South Carolina State Bank, to have produced the receiver or some official of the bank to prove what became of the proceeds of the seed check and that such proceeds did or did not come into the hands of the receiver. There could be no augmentation of assets unless the proceeds of

the draft came into his hands. A mere bookkeeping entry or shifting of accounts is never an augmentation of assets. See extensive note reported in 82 A. L. R., 46.

The proof of the receipt of the proceeds of the seed ticket by the receiver was most material to the view entertained by the Circuit Judge as to augmentation of assets, and the failure to produce this proof, although witnesses were evidently available, warrants the inference that the testimony, if presented, would have been adverse. *Ex parte Hernlen,* 156 S. C., 181, 153 S. E., 133, 69 A. L. R., 443.

The Circuit Judge held that it would be inequitable to deny preference to Rogers in this case. In our study of this case we have noticed with interest the oft-quoted statement of Justice Woods in the case of *Livingstain v. Columbian Banking & Trust Co.,* 77 S. C., 305, 57 S. E., 182, 184, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568, and because of its direct applicability it will again be quoted: "No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."

If it be claimed that the preference should be allowed because the proceeds became a trust fund in the hands of the receiver, it is sufficient to say, in addition to what has already been said, in the language of the Court in the case of *Peurifoy v. Boswell,* 162 S. C., 107, 160 S. E., 156, 162, as held in the case of *White v. Bank,* 60 S. C., 122, 38 S. E., 453: "In order to establish a trust that would entitle one to priority or preferential payment from the assets in the hands of a receiver of an insolvent bank, the fund itself must be identified in the hands of the receiver."

In *Peurifoy v. Continental Finance Co.,* 164 S. C., 261, 162 S. E., 458, 462, the Court says: "Further, I hardly think it possible to say that these certificates of deposit made in March, 1926, increased the funds of the bank, and, if so, they certainly went into the general funds of the bank, and there has been no evidence offered to earmark, identify, or trace these funds into the hands of the receiver, and

that is an essential prerequisite to claiming a preference by way of special trust."

The cashier's check given to Rogers was simply the evidence of a debt due Rogers by the bank. As the bank was unable to cash the seed ticket, Rogers being fully informed of this fact, the transaction was closed by the giving and acceptance of the cashier's check, which amounted to no more than a promise to pay at a future day, and thereby established the relation of debtor and creditor without security.

In view of the previous holdings of this Court, which have been copiously referred to in this opinion, we cannot escape the conclusion that the judgment herein should be reversed, disallowing the claim of Rogers as a preferential claim. And it is so ordered.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE BONHAM concur.

MR. CHIEF JUSTICE BLEASE (concurring) : I do not see how it is possible to escape the conclusion reached in the opinion of Mr. Acting Justice Cothran, unless the Court expressly overrules the holdings of a majority of the Court in the case of *Ex parte Sanders,* 168 S. C., 323, 167 S. E., 154, which have been followed in the two later cases of *Ex parte Town of Darlington,* 168 S. C., 242, 167 S. E., 412, and *In re Loan & Savings Bank,* 170 S. C., 388, 170 S. E., 474. I did not agree with the majority in the *Sanders case,* but I have yielded to that case as authority since its decision, as will be seen from the reports of the other cited cases.

Matters relating to preferences in insolvent banks have given this Court much concern. Because certain circumstances brought about from time to time situations which would result in what appeared to be grave injustices, the decisions of the Court, in some instances at least, appear to me to have been confusing. It is useless to enter into a discussion of that confusion at this time. The Court has sought, ill-advisedly perhaps, to follow what it conceived to be jus-

tice and equity, rather than to bow to established principles of both law and equity.

As far as the Court can by its decisions clear up any confusion of the past, it is the duty of the Court so to do. The law, as declared by the Court, should be so plain that all the people may understand it. It is not out of place for me to here repeat what I said in a situation somewhat similar : "It is not only important that the decisions of this Court be right, but it is also of full equal importance that the people know what the law is, that they may observe the law. For these reasons, I am concurring in the result of this opinion, with the understanding that from this time forward the Court will follow the principles declared therein." *Mather-James Co., Inc., v. Wilson et al.,* 172 S. C., 387, 174 S. E., 265, 267.

MR. JUSTICE STABLER (concurring in result) : I do not agree with all that is said in the opinion of Mr. Acting Associate Justice Cothran or with his analysis of some of the decisions cited. For instance, he holds that practically the only difference between *Ex parte Sanders,* 168 S. C., 323, 167 S. E., 154, and the case at bar is that "Sanders accepted a draft and Rogers accepted a cashier's check." In this I think he is in error. The preference sought in the *Sanders case* was claimed under a statute (36 St. at Large 1368), which is not here involved and which has no application to the facts of this case. Furthermore, in that case the check presented by Sanders to the Bamberg Banking Company, which afterwards failed, was drawn on that bank by one of its depositors against his account, and the transaction throughout was largely a matter of book entries, showing no increase of the bank's assets. In the case at bar, neither Rogers nor the Swift Company was a depositor in the Farmers' & Merchants' Bank, and, if the proceeds from the seed draft were received by the bank, there was clearly, under the facts stated, an augmentation of its assets to that extent.

My first impression was that the order of Judge Dennis was right. He held that it appeared that the funds involved went into the hands of the receiver and that the assets of the bank were thereby increased to that amount, and for that reason the preference should be allowed. An examination of the record, however, discloses that, while Swift & Co. paid the draft, there is no positive evidence that the proceeds ever reached the bank or the receiver. A mere inference or presumption of that fact, it has been held, is not enough. The burden was on the plaintiff to show by competent evidence that this happened. If this had been done, I think the conclusion reached by the Circuit Judge, under the admitted facts of the case, would have been correct. And it is solely on the ground, that the testimony fails to show that the bank ever received the funds in question, resulting in an augmentation of its assets, that I concur in the result of the opinion.

MR. JUSTICE CARTER (dissenting): Not being able to agree with the conclusion reached in the opinion of Mr. Acting Associate Justice Cothran in this case, I respectfully dissent.

This case comes to this Court on appeal by the Citizens' Bank, as receiver of Farmers' & Merchants' Bank of Marion, S. C., and Latta, S. C., from an order of his Honor, Judge E. C. Dennis, directing the claim filed by the South Carolina State Bank, on behalf of L. B. Rogers, to be paid as a preferred claim. The pertinent facts and issues involved, substantively stated, are as follows:

The last day the said Farmers' & Merchants' Bank was open for business was November 21, 1931; its doors having closed on account of the insolvency of the institution. Thereafter, pursuant to the order of the Court, notice was given, it appears, by the receiver to file claims with him, and all questions of priorities and preferences were referred to D. B. McItyre, Judge of Probate for said county. Pursuant to said order and notice the respondent, the South Carolina State Bank, on behalf of L. B. Rogers, duly filed its claim

for the sum of $1,279.24, as a preferred claim, which was represented by a cashier's check, issued by the said Farmers' & Merchants' Bank to the said L. B. Rogers, dated November 19, 1931. After taking testimony in the case, the Judge of Probate filed his report in said cause, dated August 10, 1932, disallowing the claim in question as a preferred claim, but ordered that "the same be allowed as a valid deposit claim against the bank and that the holder thereof have the same rights as other depositors."

From this report of the Judge of Probate the respondent herein, the South Carolina State Bank on behalf of L. B. Rogers, appealed to the Circuit Court, and the case was heard by his Honor, Judge E. C. Dennis, who reversed the report and holding of the Judge of Probate, and ordered that the said claim be paid in full as a preferred claim. As stated, the Citizens' Bank, as receiver of the Farmer's & Merchants' Bank, has appealed from the decree of Judge Dennis to this Court.

I agree with the conclusion reached by the Circuit Judge. In my opinion, the respondent cannot be considered, as was held by the Judge of Probate, a depositor in the Farmers' & Merchants' Bank, and, as I view the case, should not be treated as such. As disclosed by the record in the case, Mr. Rogers, having received from Swift & Co. a seed ticket for the amount of $1,379.23 for seed delivered to Swift & Co., presented this ticket to the said Farmers' & Merchants' Bank at Latta, for the purpose of exchanging the same for cash, and requested the cashier at said bank to deliver to him cash for the same. The cashier of this bank told Mr. Rogers that he did not have the cash in hand, whereupon Mr. Rogers walked out of the bank and into the street. Thereafter, it appears, the cashier walked out and called to him that he could give him a cashier's check for the ticket, "and that he would draw on Swift & Company for the money." Then, according to Mr. Rogers' statement, which statement is not controverted, Mr. Rogers swapped him (the

cashier of the said bank) the said seed ticket for a cashier's check. It further appears from the record that, upon returning into the bank building, the said cashier delivered to Mr. Rogers money in the sum of $100.00 and cashier's check for the difference, $1,279.24, in exchange for the said seed ticket. Mr. Rogers, in the course of his testimony, further states: "I did not deposit money or get anything except the cashier's check." I may further add, in this connection, that I fail to find any proof in the case that Mr. Rogers, in any sense, dealt with the said Farmers' & Merchants' Bank as a depositor. This took place, it appears from the record, November 19, 1931, and the said cashier's check bears date of that date. Mr. Rogers then took the said cashier's check and deposited the same in the South Carolina State Bank at Dillon, S. C. The seed ticket "was forwarded by Farmers' and Merchants' Bank to Columbia by mail on November 19, 1931, through National Loan & Exchange Bank of Columbia, and the same was paid by Swift & Company on Noevmber 20, 1931." As stated above, the last day the said Farmers' & Merchants' Bank was open for business was November 21, 1931. While there does not appear in the transcript of record any direct statement to the effect that the proceeds of said ticket went into the hands of the receiver, in my opinion, that is the only reasonable conclusion to be reached from the facts and circumstances in the case. In this connection, I may state that I fail to find in the transcript of record any denial that the receiver came into possession of this fund. In the absence of any showing or contention to the contrary by the receiver, it is reasonable to assume that the receiver came into possession of the proceeds of said seed ticket. The seed ticket was paid by Swift & Co. November 20, 1931, and paid to the agents of the said Farmers' & Merchants' Bank; the said bank had complete control of the collection of the same. In the face of no showing and no contention to the contrary, so far as the transcript of record discloses, the only reasonable conclusion to

reach is that said bank or its receiver came into possession of said fund and its assets thereby increased by said amount. Mr. Rogers, according to the record, had no intention of becoming a depositor, and, in my opinion, under the facts and circumstances of this case, it would be inequitable to permit the said Farmers' & Merchants' Bank or the receiver of that insolvent institution to receive and keep the proceeds of the said seed ticket, received in exchange for the said cashier's check, without the requirement of the payment of said check. I think, as held by the Circuit Judge, that the claim of the South Carolina State Bank, on behalf of the said L. B. Rogers, should be paid in full. I may further state that, while it is evident from the record in the case that at the time Rogers exchanged the seed ticket in question for the said cashier's check, the said Farmers & Merchants' Bank was insolvent, the record does not show that Rogers knew of such insolvency. The appellant has called our attention to the following cases in support of its contention that the position of the Circuit Judge should be reversed and the position of the probate Judge sustained: *Peurifoy, Receiver, v. Continental Finance Company,* 164 S. C., 261, 162 S. E., 458; *Peurifoy, Receiver, v. Boswell,* 162 S. C., 107, 160 S. E., 156; *Railway Express Agency v. Bethea,* 165 S. C., 230, 163 S. E., 637; *Citizens' Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510. In my opinion, these cases, when considered in connection with the facts and circumstances of the case at bar, will be seen to be not in conflict with the views I have expressed herein. In connection with the views I have expressed, I call attention to the following cases of our Court: *Ex parte Berger,* 81 S. C., 244, 62 S. E., 249, 22 L. R. A. (N. S.), 445; *Loan & Savings Bank v. Peurifoy,* 141 S. C., 318, 139 S. E., 783, and *Hampton Loan & Exchange Bank v. Lightsey,* 155 S. C., 222, 152 S. E., 425.

In my opinion, the exceptions should be overruled and the judgment of the Circuit Court affirmed.