L. A. ANDREW, State Superintendent of Banking, Appellant, v. SECURITY SAVINGS BANK OF PERRY et al., Appellees.

**TRUSTS: Express Trusts.** The deposit of funds with a bank under an
1  agreement that the bank will keep the same invested and pay the interest income to a named beneficiary necessarily constitutes an express trust.

**BANKS AND BANKING: Liability of Bank.** A bank will be deemed
2  the trustee of an express trust when such was the understanding, even though an officer of the bank was treated on the books of the bank as trustee.

**BANKS AND BANKING: Trusts—Trust Treated as General Deposit—**
3  **Effect.** The carrying on the books of a bank of an admitted express trust as a general deposit in no manner changes the nature of the trust.

**BANKS AND BANKING: Trusts—Want of Authority—Effect.** Want
4  of authority in a bank to assume a trusteeship in no manner changes the nature of the trust and in no manner gives the bank title to the subject-matter of the trust.

**TRUSTS: Preservation—Presumption.** It will be presumed that a bank
5  acting as trustee has preserved the subject-matter of the trust; and in

case of insolvency, the receiver does not establish dissipation of the trust by a mere showing that he, when appointed, received in money much less than the amount of the trust, it appearing that the amount of the trust fund had passed into the general assets of the bank. Especially is this true (1) when the trust fund was created with bills receivable, which were to be invested in mortgages, and (2) when the bills receivable of the bank, at the time of its insolvency, largely exceeded the amount of the trust fund.

**RECEIVERS:** Claims—Belated Filing. It is within the discretion of the court to recognize a belatedly filed claim, no dividends having been paid.

Headnote 1: 7 C. J. pp. 632, 751; 39 Cyc. p. 71. Headnote 2: 7 C. J. pp. 632, 751. Headnote 3: 7 C. J. p. 751. Headnote 4: 7 C. J. p. 751. Headnote 5: 7 C. J. p. 751. Headnote 6: 7 C. J. p. 744.

Headnote 1: 3 R. C. L. 715; 26 R. C. L. 1201. Headnote 5: 3 R. C. L. 554.

*Appeal from Dallas District Court.*—W. S. COOPER, Judge.

APRIL 5, 1927.

The Security Savings Bank of Perry, Iowa, was placed in the hands of the plaintiff as receiver. Retta Mills, Ward A. Mills, Leon E. Mills, and Vern O. Mills filed a petition of intervention and claim for preference, which was allowed. The receiver appeals.—*Affirmed.*

*Ben J. Gibson,* Attorney-general, and *Harry Wifvat,* for appellant.

*George J. Dugan* and *George H. Sackett,* for appellees.

MORLING, J.—The Security Savings Bank of Perry, Iowa, was closed January 24, 1925, and the plaintiff in due course was appointed receiver. An order was made, fixing the time for filing claims. After the expiration of the time so fixed, this petition of intervention was filed. It was stipulated at the trial, however, that no dividend had, up to that time, been paid to any depositor. The claimant Retta Mills is the widow, and the other claimants are the sons, of J. R. Mills, deceased. On October 18, 1920, M. M. Heptonstall was president of the defendant bank. On that date he prepared for claimants,

1. TRUSTS: express trusts.

and they executed, a written agreement, in which the claimants only were named as parties, providing, among other things:

"It is further understood and agreed that second parties shall deposit with the Security Savings Bank, Perry, Iowa, for investment by said bank to the best advantage in safe real estate mortgages, the sum of $6,000, the income from which shall be turned over to first party semiannually as collected. Said income to continue so long as first party shall remain the widow of our father J. R. Mills. Upon the remarriage or death of first party, said income shall cease and the sum of $6,000 shall revert to second parties."

Pursuant to this agreement, two of the sons, on November 30, 1920, gave to the bank their promissory note for $6,000. This note became a part of the bills receivable of the bank, and in the course of a few months was fully paid to the bank. Heptonstall, at the time the written agreement was prepared, verbally promised for the bank to safely invest the fund. When the note was given, the amount of it, $6,000, was placed to the credit of M. M. Heptonstall, trustee, on the books of the bank, and was so carried until after Heptonstall's connection with the bank was severed, in 1923, when the account was changed to the name of C. A. Graves, trustee. Graves was then vice president of the bank. Shortly after the agreement of October 18, 1920, was made, Heptonstall announced that he would invest the $6,000 in a mortgage on the Stevenson block. Heptonstall took Stevenson's note for $6,000, and a mortgage on the block to secure it, and informed claimants that he had invested their money in that property. The Stevenson note, however, was rediscounted by the bank, and, after the appointment of receiver, was paid to the receiver, and the proceeds were by the receiver paid to the then holder of the Stevenson note. At the time of the closing, the bank had over $300,000 of bills receivable, of which at least $100,000 has been collected. The Security Savings Bank paid the widow semiannually interest on the $6,000. After Heptonstall's retirement, the bank obtained another security for $300 on account of the trust fund. The $300 was charged against the trust fund, reducing the book credit to $5,700, for which amount the preference was allowed.

I. It is argued that Heptonstall was acting in his individual, and not his official, capacity in making the agreement,

2. BANKS AND
BANKING: lia-
bility of bank.
and that he individually, and not the bank, was the trustee. The evidence clearly shows that he professed to be, and was accepted and understood as, acting for the bank, and that the bank was the trustee.

II.   The case is not one in which it is sought to impress upon the assets of the bank an implied trust when no trust relationship was ever intended.   The bank received the $6,000

3. BANKS AND
BANKING: trusts:
trust treated as
general deposit:
effect.
rightfully.   It is shown without contradiction that the $6,000 was deposited and received with the intention, both on the part of the depositor and of the officers of the bank, of making it a fund to be held in trust and invested by the bank on real-estate security.   The matter came to the knowledge of the bank examiner soon after Heptonstall left, and it was at the examiner's instance that the account was changed to the name of Graves.   The case is not one of a trust of specific property, which is to be retained, kept separate, and accounted for in specie by the trustee, as is ordinarily the case of a mere trust committed to a non-banking trustee. The case is not one of a strictly special deposit, in which the particular money or thing deposited is to be kept separate and returned in specie.   The case is one of a deposit of funds with a bank, where the specific funds deposited are received by the bank to be converted into other funds, but nevertheless to create a fund held and used by the bank only for a specific purpose,— usually called a specific deposit.   A fund so created is held in trust by the bank for a specific designated purpose, and is a trust fund, which the bank holds merely as trustee.   The bank, as to the beneficiaries, does not take title to the fund so created. *Officer v. Officer*, 120 Iowa 389; *Whitcomb v. Carpenter*, 134 Iowa 227; *Dolph v. Cross*, 153 Iowa 289; *Smith v. Sanborn State Bank*, 147 Iowa 640; *First Nat. Bank v. Propp*, 198 Iowa 809; 7 Corpus Juris 631.   One of the officers, while saying that he knew it was a trust fund that could be loaned on real estate, says it was a general deposit.   It was kept on the books of the bank in the form of a general deposit.   This, however, was merely a matter of bookkeeping.   The legal effect of the transaction is to be determined from the facts, and not merely from the meth-

4. BANKS AND
BANKING:
trusts: want of
authority:
effect.
od of keeping the account, or the opinion of an officer that, as so kept, it was a general deposit. *Idem.*   The relationship of the bank to the fund, therefore, was that of acknowledged trustee.

Whether or not the bank had authority to act as trustee is immaterial. Its want of authority to execute the trust could not operate to confer on it title to the trust property.

III. The receiver contends that the fund has not been traced into his hands. The $6,000 note went into the possession of the bank, and became a part of its bills receivable. The note is pre-

5. TRUSTS: preservation: presumption.

sumed to have been worth its face. *Mulenix v. Fairfield Nat. Bank,* 203 Iowa 897, and cases cited. It was in fact paid to the bank. There is testimony that the fund was made up from the certificates of deposit of the defendant bank and of the Perry National Bank. The amount of the certificates in either bank is not shown. The record is that, on November 30, 1920, there was paid on the note $1,731.04; on December 4, 1920, $809.31 and $905; on January 16, 1921, $729.77; on April 27, 1921, $300; on April 30, 1921, $420; on May 20, 1921, $218.40; on June 20, 1921, $486.48: and that the note has been paid in full. What the payments consisted of is not further shown. It is true that augmentation of the assets of an insolvent does not result merely from payment of debts. *Leach v. Iowa State Bank,* 202 Iowa 887; *Jones v. Chesebrough,* 105 Iowa 303; *Bradley v. Chesebrough,* 111 Iowa 126; *Farnesworth v. Muscatine P. & P. I. Co.,* 177 Iowa 21; *Hanson v. Roush,* 139 Iowa 58; *Stilson v. First State Bank,* 152 Iowa 724; *First State Bank v. Oelke,* 149 Iowa 662; *Board of F. & M. Commissioners v. Wilkinson,* 119 Mich. 655 (78 N. W. 893) ; *Bank Commissioners v. Security Tr. Co.,* 70 N. H. 536 (49 Atl. 113) ; *Slater v. Oriental Mills,* 18 R. I. 352 (27 Atl. 443). It is true also that, in a contest with the creditors of an insolvent, it must be proved that the alleged trust funds actually became a part of the assets in the possession of the insolvent and augmented them. The bank received the $6,000 note more than four years before it closed. There is nothing in the record to indicate that at that time it was in financial distress, or that there was any collusion or want of good faith. The payments that were made were all of quite ordinary amounts, and apparently made in quite an ordinary manner and in the regular course of business. The fund was treated by the officers of the bank as an actually existing fund in its possession. When Heptonstall left, the question was raised whether the fund was still on hand, and the parties concerned assured themselves that it was. One officer

says that the money was put in the Stevenson building "at that time, and handled there as a trust fund." Another, after referring to the rediscount of the Stevenson note and that the bank had gained some deposits, but had not been able to substitute, says, "So I presume that is one reason that Mr. Graves had not invested this fund in the Stevenson mortgage." The evidence does not show that the Stevenson loan was segregated and set apart from the other bills receivable as the property constituting the specific trust fund, and thereafter dissipated. While the examiner in charge testified that the money coming into his hands in cash in the bank was $3,226.15, it cannot from that fact, under the evidence here, be held that the trust fund in excess of that amount was dissipated. The fund was created and to be kept, not in cash, but was created in the bills receivable, and to be kept in mortgages. The original augmentation was in the bills receivable. *Leach v. Iowa State Bank*, 202 Iowa 887. The understanding was that the fund should be kept invested, and that it was on hand. The fund is satisfactorily shown to have come into the possession of the bank and to have augmented the assets. The presumption is that the fund was retained and turned over to the receiver. At this point, the burden of going on with evidence is on the receiver. *Idem; Murray v. North Liberty Sav. Bank*, 196 Iowa 729, 733; *Cable v. Iowa State Sav. Bank*, 197 Iowa 393; *Hudspeth v. Union Tr. & Sav. Bank*, 197 Iowa 913; *Lusk Dev. & Imp. Co. v. Günther*, 32 Wyo. 294 (232 Pac. 518); *Chapman v. First Nat. Bank* (Tex. Civ. App.), 275 S. W. 498. As has been noted, this is a case of an express trust, so recognized. The circumstances are not such as to create an inference of dissipation. The questions presented are close and troublesome, but we are of the opinion that the prima-facie case made out by the facts and presumptions recognized in such cases has not been overcome.

IV. The order fixing time for filing claims was for the purpose of enabling the court to liquidate the estate in an orderly and equitable manner. It was within the discretion of

6. RECEIVERS: claims: belated filing.

the court to permit the claim to be presented and allowed after the expiration of the time fixed,—at least in the absence of any showing of prejudice.

The judgment is—*Affirmed.*

Dᴇ Gʀᴀғғ, Vᴇʀᴍɪʟɪᴏɴ, and Aʟʙᴇʀᴛ, JJ., concur.

Eᴠᴀɴs, C. J., and Sᴛᴇᴠᴇɴs, J., dissent.

---

Eᴅ Aʀɴᴇᴛᴛᴇ et al., Appellees, v. Josᴇᴘʜɪɴᴇ C. R. Wᴀᴛsoɴ, Executrix, Appellant.

ᴛʀᴜsᴛs: Trustees—Powers—Execution of Notes. Power in a testamentary trustee to invest and reinvest the subject-matter of the trust and generally to do substantially whatever the testator might do, were he alive, necessarily embraces the power to purchase lands and to execute promissory notes therefor.

Headnote 1: 39 Cyc. pp. 334, 411.

*Appeal from Palo Alto District Court.*—D. F. Coʏʟᴇ, Judge.

Aᴘʀɪʟ 5, 1927.

Suit on promissory note. Defense that the note was executed by a trustee under a will, without authority, and was without consideration and void. Judgment was entered for the amount due on the note. Defendant appeals.—*Affirmed.*

*Nefstead & Carmichael,* for appellant.

*Thomas O'Connor* and *Heald, Cook & Heald,* for appellees.