JOHN MILLER, Appellee, v. L. A. ANDREW, Receiver Mid-West State Bank, Appellant.

OCTOBER 23, 1928.

*John Fletcher,* Attorney-general, *L. B. Forsling,* and *Robert B. Pike,* for appellant.

*Pendleton & Browning,* for appellee.

WAGNER, J.—The Mid-West State Bank, of Sioux City, closed its doors on November 13, 1925. The receiver gave to the claim of John Miller the classification of that of a depositor. It is the claimant's contention that his claim is entitled to be classified as a preferred claim,—a trust fund which passed into the hands of the receiver. Upon trial as to that issue, the trial court held with the claimant, and the receiver appeals.

958

There is very little, if any, controversy as to the facts. Several years prior to the closing of the bank, the claimant purchased from that institution a $4,000 note, secured by mortgage upon real estate, which note was not due at the time of the transactions hereinafter referred to. The claimant carried a checking account in said bank, and as the interest had been paid by the makers of the note at the bank, the amount thereof, in accordance with instructions given by the claimant to the bank, was placed to the credit of the claimant's checking account. The makers of the note made request of the claimant that he release 40 acres of the real estate from the lien of the mortgage, which request was refused by the claimant. Said note, in the principal sum of $4,000, is not in evidence, but it appears from the record that the makers thereof had the privilege of paying the same on any interest pay day. After the claimant refused to release a portion of the real estate from the lien of the mortgage, Mrs. Rooney, one of the mortgagors, and the representative of a loan company appeared at the bank, and informed Roe, the president of the bank, that they desired to pay the $4,000 note, as arrangements had been perfected for the securing of a larger loan upon the real estate. This intelligence was communicated by Roe to the claimant, who informed Roe that he would be compelled to take the money if the Rooneys desired to pay it. A conversation was had between the claimant and the representative of the bank, looking to a reinvestment of the money when paid. The claimant was informed that the bank, at that time, had pending applications for two loans, each in the amount of $2,000, to be secured by mortgage. The claimant inspected the properties offered as security in the two applications, and instructed the bank that, when the money was paid into the bank by the Rooneys upon the $4,000 note, it should apply the principal of $4,000 in payment of the two $2,000 mortgage notes, when executed, and hold said two $2,000 notes and mortgages securing the same for him.

The amount of principal and interest of the Rooney note, amounting to $4,152.02, was paid to the bank October 22, 1925, and the whole amount was credited by Miss Anderson, an employee in the bank, to claimant's checking account; but, at that time, both she and Roe, the president of the bank, knew that the principal, of $4,000, was to be applied in payment of the two

$2,000 mortgage notes, when executed. The claimant did not know when the money was paid to the bank, and did not know, until after the bank had closed, that his account had been credited with this money.

Prior to the time of the closing of the bank, one of the two $2,000 notes, and mortgage securing the same, had been executed, and by means of a debit slip, or ticket, claimant's account was debited with the amount of $2,000. These instruments the claimant received after the receiver took charge. The other $2,000 note and mortgage had not been executed. Had they been executed, they would have been held for the claimant.

It is conceded of record that, at all times subsequent to the date of the receipt by the bank of the amount due on the $4,000 note, the bank had in cash not less than $16,000, which amount came into the possession of the receiver.

The question for our determination is as to whether, under the aforesaid state of facts, the claimant is entitled to a preference. From the foregoing, it is manifest that the bank was the agent of the claimant to receive the money and use $4,000 of same for a specific purpose. There was nothing remaining for the claimant to do in connection with the transaction.

"* * * a specific deposit exists when money or property is given to a bank for some specific and particular purpose, as a note for collection, money to pay a particular note, or property for some specific purpose." *Officer v. Officer*, 120 Iowa 389.

"A fund so created is held in trust by the bank for a specific designated purpose, and is a trust fund, which the bank holds merely as trustee." *Andrew v. Security Sav. Bank*, 203 Iowa 546.

In *In re Receivership of Security Sav. Bank of Perry*, 205 Iowa 171, we said:

"It is a well established doctrine that if, from the nature of the transaction, it appears that the relation of a claimant and a bank is that of principal and agent, the money of the claimant is held by the bank as trustee, and the claimant is entitled to a preference, on the insolvency of the bank, upon a proper tracing of the money into the hands of the receiver. * * * It is also well settled that a special deposit, or a deposit for a specific purpose,

creates a trust relation, as between the depositor and the bank, which will entitle him to a preference.''

In *Leach v. Iowa State Sav. Bank of Sioux City*, 204 Iowa 497, the Metropolitan Life Insurance Company placed funds with the bank, to be paid out for specified first mortgage loans then being negotiated, when designated conditions were complied with. We there held that the life insurance company was entitled to a preference.

The fact that the $4,000 paid by the Rooneys was credited by the employee of the bank to the checking account of the claimant was merely a matter of bookkeeping, and the legal effect of the transaction is to be determined from the facts, and not merely from the method of keeping the account.  *Andrew v. Security Sav. Bank*, 203 Iowa 546. In view of our previous pronouncements, we cannot escape the conclusion that it was the duty of the bank to keep the principal of the Rooney note for the specific purpose designated by the claimant in his instructions to the officer of the bank, and that, as agent of the claimant, the bank held said fund in trust. See *In re Receivership of Security Sav. Bank of Perry*, 205 Iowa 171; *Leach v. Iowa State Sav. Bank of Sioux City*, 204 Iowa 497; *Andrew v. Security Sav. Bank*, supra; *First Nat. Bank v. Propp*, 198 Iowa 809; *Hudspeth v. Union Tr. & Sav. Bank*, 196 Iowa 706, 707; *Dolph v. Cross*, 153 Iowa 289; *Whitcomb v. Carpenter*, 134 Iowa 227; *Smith v. Sanborn State Bank*, 147 Iowa 640; *Officer v. Officer*, supra; 7 Corpus Juris 631.

Inasmuch as the amount of the cash assets of the bank at all times exceeded the amount of the trust fund,—a sum in excess of $16,000 having been assets of the bank at all times after the receipt of the trust fund, which amount came into the hands of the receiver,—the fund has been sufficiently traced into the hands of the receiver, and the claimant is clearly entitled to a preference.

However, the appellant is entitled to a slight modification of the decree. At the time of the closing of the bank, the claimant's checking account, to which the principal of the Rooney note had been unauthorizedly credited, amounted to only the sum of $1,980.34. It thus appears that the claimant had overdrawn his account, not including the trust fund. He had no knowledge that the trust fund had been credited to his account.

However, the claimant in this way received of the trust fund the difference between $2,000 and $1,980.34, or $19.66; and, having received said latter amount, he is now entitled to a preference, as to the cash coming into the hands of the receiver, for only the remaining amount of said trust fund, to wit, $1,980.34; and the decree is modified accordingly, and as thus modified, the decree of the trial court is hereby affirmed.—*Modified and affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.