13327

PEURIFOY, RECEIVER, v. CONTINENTAL FINANCE CO.
RICE v. CITY OF COLUMBIA

(162 S. E., 458)

262

263

264

265

266

*Messrs. Sloan & Sloan,* for appellant,

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.*, for plaintiff-respondent,

January 14, 1932.

The opinion of the Court was delivered by Mr. Acting Associate Justice John I. Cosgrove.

The American Bank & Trust Company, of Columbia, closed its doors in June, 1926, and in the above-entitled cause of *Rice v. City of Columbia*, Hon. Jas. E. Peurifoy was appointed its receiver.

This action was brought by him, as receiver, in March, 1928, against the above-named appellant, Continental Finance Company, seeking instructions as to the payment of a claim filed by that company with him.

The Court was asked to determine whether or not the finance company was entitled to have its claim under four certificates of deposit declared a trust or preferred claim against the assets of the insolvent bank. His Honor, Circuit Judge Ramage, heard the case upon an agreed statement of facts and affidavits and filed his decree denying the preference. From that decree comes this appeal.

We have given careful consideration to the questions presented by appellant's exceptions. Judge Ramage, in his elabrate and well-considered decree, passed adversely upon the same questions presented by these exceptions. His findings of fact and conclusions of law are satisfactory to this Court. The decree will be reported.

It is the judgment of this Court, therefore, that the order and judgment appealed from be affirmed.

Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran dissents.

Mr. Chief Justice Blease disqualified.

Mr. Justice Cothran (dissenting) : This is a proceeding in the main cause above stated, by the receiver of the American Bank & Trust Company, for the purpose of having adjudicated a claim of the Continental Finance Company to a preference in the distribution of the assets of the above-named bank, which closed its doors on June 25, 1926, by reason of insolvency, and whose affairs were placed in

the hands of Peurifoy, receiver, in July, 1926, in said main cause.

The claim of the Continental Finance Company to a preference is based upon the following facts which are not controverted upon either side:

A few days prior to March 25, 1926, the Continental Finance Company (hereinafter referred to as the finance company), negotiated a loan with the American Bank & Trust Company (hereinafter referred to as the American Bank), of $49,200.00; the negotiations for the loan were conducted by David Kempner, president of Bergin & Co. (Inc.), brokers in the City of New York; the American Bank required as a condition of making the loan a guaranty by a surety company; the Metropolitan Casualty Insurance Company (hereinafter referred to as the Metropolitan Company), agreed to execute such guaranty upon condition that 15 per cent. of the loan be left on deposit with the American Bank, and that certificates of deposit be issued by that bank in the name of the Metropolitan Company, maturing at different dates and applicable to the notes of the finance company as the maturities were synchronous.

It does not appear that the American Bank made any demand that this deposit be made, or that it knew anything of the condition imposed by the Metropolitan Company, while the negotiations were pending; in fact, I think that it appears that it made no such demand and knew nothing of the condition; it would appear later, however, that when the transaction was being completed, the American Bank fell completely into line with the negotiations; it appears therefore that at that time it had full knowledge of the condition and acquiesced in it.

The finance company was located in Dayton, Ohio, and it is evident that the negotiations for the loan by the American Bank were instituted there with the Dayton Savings Bank & Trust Company and that the latter negotiated with Bergin & Co. of New York; for we find in the record the following

letter, dated March 23, 1926, from the Dayton Bank to the American Bank:

"March 23, 1926.

"American Bank & Trust Co.,
 "Columbia, S. C.

"Gentlemen:

"In accordance with instructions from the Continental Finance Company, who received their instructions from G. B. Bergin & Company, New York, we have today shipped you $49,200.00 Serial Notes of said Continental Finance Company, with draft attached for $47,566.82 (with all exchange and collection charges). Said draft will be presented to you through the National Loan & Exchange Bank, Columbia, S. C.

"Description of the notes is given you on the attached sheet, together with the number of days to each maturity and the discount thereon. The face of the draft is computed, as follows:

Par value of notes ....................... $ 49,200.00
Discount ..............................      1,633.18
                                          _____
Balance ............................... $ 47,566.82

"In accordance with agreement there is to be 15% of the face amount deposited with you in certificates. This amounts to $7,380.00 and certificates for such amount will be accepted by the National Loan & Exchange Bank, as part settlement on the draft; balance of $40,186.82 to be paid in cash. Please issue certificates of deposit in the name of The Metropolitan Casualty Insurance Company, being four at $1,845.00 each, maturing three, six, nine and twelve months after March 25th, 1926, without interest. In case this draft is not paid on March 25th please add interest on $49,200.00 at 6% for each additional day."

(Signed by the vice-president and trust officer of the Dayton Savings Bank & Trust Company.)

Accordingly there were transmitted by the Dayton Bank to the American Bank 60 promissory notes of the finance company, 48 of which were for $1,000.00 each and 12 for $100.00 each, aggregating $49,200.00; four of the $1,000.00 notes and one of the $100.00 notes, aggregating $4,100.00, were made due on the 25th of each month thereafter beginning with April 25, 1926, and ending with March 25, 1927, 12 payments of $4,100.00 each, aggregating the principal sum $49,200.00. They were drawn payable to the order of the finance company and were indorsed by that company and delivered to the bank upon its payment of the draft referred to in the letter of the Dayton Bank.

Prior to the delivery of the notes, and as a condition of the loan, each note was guaranteed by the Metropolitan Casualty Insurance Company. It is of interest and importance to observe the form of the notes and the guaranty of the Metropolitan Company; there follows a copy of one note and of the guaranty as a sample of all:

"The Continental Finance Company
            "Guaranteed Note
"No. 102                                      $1,000.00

                      "Dayton, Ohio, March 25, 1926.

"On April 25, 1926, without grace, we promise to pay to the Order of Ourselves One Thousand Dollars at the Dayton Savings & Trust Company, Dayton, Ohio, with interest after maturity, value received."

(Signed and sealed officially by the finance company, by its proper officers.)

The guaranty was in the following form:

"GUARANTEE

"The undersigned in consideration of an agreed premium, receipt of which is hereby acknowledged, unconditionally guarantees the payment of Principal and Interest on the foregoing Promissory Note at Maturity."

( Signed and sealed officially by the Metropolitan Company by its proper officer.)

Upon the back of the guaranty was the following:

"ENDORSEMENT

"To Whom it may Concern:

"The Metropolitan Casualty Insurance Company is secured hereunder:

"(1) By pledge of conditional sales contracts, chattel mortgages or lease agreements between the Continental Finance Company and the purchasers of automobiles.

"(2) By the assets of The Continental Finance Company.

"(3) By a reserve cash deposit."

Upon the same day, at the same time, and manifestly as a part of the single transaction, the American Bank honored the draft and issued to the Metropolitan Company (guarantors), four certificates of deposit, each in the sum of $1,-845.00, numbered 61, 62, 63, 64, and maturing respectively June 25, September 25, December 25, and March 25, 1927, without interest. The following is a copy of one of the certificates; the others being identical except as to maturities:

"American Bank & Trust Company of Columbia

"No. 63                                           $1,845.00

"Columbia, S. C., March 25th, 1926.

"The Metropolitan Casualty Insurance Company has Deposited in this Bank Eighteen Hundred Forty-five........ Dollars

"Payable to the Order of Themselves

"On Return of this Certificate Properly Endorsed."

"Interest at the Rate of No per cent. Per annum if allowed to remain 9 months.

"Interest Ceases at Maturity of this Certificate."

(Signed by C. M. Earle, Cashier.)

While these certificates of deposit were negotiable instruments, by an arrangement between the finance company and

the Metropolitan Company (which then held the certificates) were indorsed by the Metropolitan Company and deposited with Hooven-Huffman Company of Dayton in trust to hold "for the specific purpose of liquidating a portion of the notes at the said bank (American Bank), falling due on the date of said certificates"; evidently for the purpose (in protection of the interest of the finance company), of destroying the negotiability of the certificates, and of dedicating them to the purpose above indicated. While the American Bank was not a party to this arrangement, it is clear that neither it nor its receiver can claim any benefit from the original negotiability of the certificates. Moreover, as a matter of fact they were not negotiated, and no *bona fide* purchaser appears to claim any interest in them.

Later the finance company paid off the notes which were held by the State Highway Commission, to whom they had been pledged by the American Bank as security to deposits made by the commission in the American Bank; the Metropolitan Company, having been thus discharged from their guaranty, indorsed the certificates to the finance company.

While the American Bank may not have insisted in the first instance upon the deposit of 15 per cent. of the loan, it evidently was acquainted with its object to protect the guaranty company, and did all that they could do to further that protection of which they were fully advised by the notice on the back of the notes and the letter of transmissal of the Dayton Bank above quoted; the American Bank acquiesced in the scheme and cannot now repudiate the contention that the deposit was made for the specific purpose indicated. Moreover, it was to the distinct advantage of the American Bank that the deposit be made, adding to the security of the loan, and giving it the use of $7,380.00 without interest, an arrangement which netted it nearly $300.00.

The notes aggregating $4,100.00, maturing April 25th and May 25th, were duly paid by the finance company. The certificate of deposit maturing June 25th was forwarded in

due course to the bank for collection and application to the note due on that day, but it was protested and returned unpaid (that being the very-day upon which the bank closed its doors).

It appears incontrovertibly therefore that the deposit was a special deposit.

The case was, by agreement, heard by his Honor, Judge Ramage, upon an agreed statement of facts, substantially as above detailed, and certain affidavits and documentary evidence. On May 29, 1930, he filed a decree denying the appellant's claim to preference, and from this decree due notice of appeal was given, and the case comes before this Court on exceptions thereto.

If the deposit, evidenced by the four certificates of deposit, aggregating $7,380.00, was made for the specific purpose of application, as they severally matured, to the notes of the finance company, it was impressed with a constructive trust, and may be traced, in amount and not necessarily in specie, to funds actually received by the receiver, the finance company is entitled to priority of payment of the balance due upon them, $2,583.00, out of the funds in the hands of the receiver for distribution.

"A deposit may be for a specific purpose, as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent of the depositor, and if it should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit." 7 C. J., 631, 632.

"Where a deposit was special, was made for a special purpose or was in any way segregated so that title did not pass to the bank, it must, of course, be paid in preference to general creditors." 7 C. J., 749, 750.

"Upon a special deposit a bank is merely a bailee and is bound according to the terms of the special deposit. When a bank receives a deposit for a special purpose it is charged with the duty of applying the money to that purpose, this duty it is under obligation to perform in strict accordance with its instructions and it cannot use or dedicate such deposit for any other purpose." 2d Michie Banks & Banking, 1298.

"The bank is bound to keep intact a fund deposited special. A special deposit creates a trust fund and the bank is bound to keep it intact for the purpose specified. A bank having become the special depository of a fund is bound to retain it until it is drawn out for the use designated, or if the purpose of deposit has become incapable of execution to hold the fund to the use of the original depositor." 2d Michie Banks & Banking, 1299.

"The reported case * * * sustains the rule laid down in the original annotation, that specific deposit for a particular known purpose is a preferred claim in favor of the depositor, on the insolvency of the bank, and is not to be considered as part of its general assets." 39 A. L. R., 930.

"When the bank accepts a special deposit, it becomes a trustee of the depositor, and holds the money subject to the trust." *Washington Shoe Mfg. Co. v. Duke,* 126 Wash., 510, 218 P., 232, 233, 37 A. L. R., 611.

To the same effect, *Amos v. Baird,* 96 Fla., 181, 117 So., 789; *Miller v. Andrew,* 206 Iowa, 957, 221 N. W., 543.

In *Titlow v. Sundquist* (C. C. A.), 234 F., 613, money was deposited with a bank for the express purpose of having the bank pay the mortgage indebtedness of a third party, and it was held that this created a special deposit, entitling the depositor to a preference if the bank failed before the transaction was completed.

To the same effect, *Northwest Lumber Co. v. Bank*, 130 Wash., 33, 225 P., 825, 39 A. L. R., 922.

The doctrine is recognized and approved in *Fort v. Bank*, 82 S. C., 427, 64 S. E., 405, 406. In that case the owner and purchaser of certain premises agreed with the officials of the bank that funds deposited by the owner should be held by the bank to protect the purchaser against a mechanic's lien. Subsequently the bank paid out the funds on the owner's check. The Court held: "There can be no doubt of the bank's liability if it accepted the deposit with knowledge of and assent to the alleged agreement subjecting it to the claim of Bayly. The agreement made the deposit special to the extent of the Bayly claim, and it was the duty of the bank to retain of the deposit a sum sufficient to pay the Bayly claim." And again: "The contemporaneous agreement among the plaintiff, the depositor, and the bank officers affected the deposit with the trust assumed by the bank to hold sufficient of it to protect plaintiff against the Bayly claim."

In the case of *Fant v. Home Bank,* 152 S. C., 140, 149 S. E., 599, 600, attention may be called to the opinion of Mr. Justice Blease (now Chief Justice), in which it is stated: "If the agreement in the case at bar had provided absolutely that the bank was to deliver the moneys to Prothro, or to the Hill Chevrolet Company, the situation would be different."

And to the opinion of Mr. Justice Stabler: "It was agreed by all parties that the moneys received from the Hill Chevrolet Company were to be deposited in the bank in the name of Prothro, subject to his order, or for the purpose of readvancement to the company. It is therefore clear that Prothro, under the terms of the agreement, could check out of the bank at any time, for purposes other than for readvancement to the company, the whole or any part of the funds so deposited, and that the bank would be bound to honor his orders."

It is insisted by the receiver that the finance company is not entitled to preference for the reason that it is unable to

trace and impose a trust and earmark its funds; that they must go further than to show a trust deposit, by following and earmarking the fund.

It is admitted that the assets of the American Bank which were taken over by the receiver amounted to approximately $1,000,000.00, including $75,000.00 in cash on deposit in a bank in Richmond.

The finance company contends, I think correctly, that a substantial identification of the fund is all that is necessary to perfect its priority. The issuance under the circumstances of the certificates of deposit was the same as if the finance company had drawn from the American Bank the net proceeds of the loan in cash and immediately returned to the bank $7,380.00 in cash for which certificates were to be issued. This cash necessarily swelled the assets of the bank and was a special deposit, a trust fund, which never became the property of the bank, and in which therefore the creditors of the bank acquired no interest.

In *White v. Bank,* 60 S. C., 122, 38 S. E., 453, 455, the Court said: "The doctrine now held being that in following a trust fund it is not necessary to trace the identical coins or bills of which it is composed. Substantial identity is all that need be proved and therefore a *cestui que* trust may pursue and recover a trust fund originally received by the trustee in the form of money, so long as its identity as a fund can be ascertained, although he may be unable to trace the identical coins or bank bills in which such money was originally paid to the trustees. As an illustration of this, it is said in some of the cases that if a trustee receives a sum of money impressed with a trust, and puts such money into a bag along with other money which belongs to the trustee in his own right, the *cestui que* trust has a right to take out of that bag the amount of the trust fund which the trustee had put in the bag; and this for the reason that so much of the money in the bag belongs to the *cestui que* trust and not to the trustee, and the fact that in taking out the money he may get

some of the coins or bills which belonged to the trustee in his own right cannot affect the question, as he gets no more than what belongs to him. Indeed, the fundamental principle upon which the doctrine that a *cestui que* trust may follow property in which his trust funds have been invested into the hands of any person, except a *bona fide* purchaser for valuable consideration, rests, is that such property, in equity, belongs to him, and he has a right to reclaim it." Approved in *Yeldell v. Bank,* 118. S. C., 442, 110 S. E., 789; *Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. E., 239.

In *Northwest Lumber Co. v. Bank,* 130 Wash., 33, 225 P., 825, 39 A. L. R., 922, it was held, quoting syllabus: "In the case of a general deposit the relation of debtor and creditor between bank and depositor exists, and in the event of insolvency depositor is entitled only to a *pro rata* amount of assets, while in the case of special deposit the relation of trustee and *cestui que* trust arises, and in case of insolvency depositor is entitled to reclaim the whole from the general mass with which it has been commingled if such mass has not subsequent to the deposit been reduced to an amount less than the special deposit." In the opinion the Court said: "By presenting the check to the bank, and directing what disposition should be made of the fund represented by it, the lumber company sought to collect this part of the debt due it from the bank and deposit the fund for a special purpose. In other words, it sought thereby to change a part of its general deposit into a special deposit. The bank, by accepting the check with knowledge of the purposes of the lumber company, consented to the change."

In *Miller v. Andrew,* 206 Iowa, 957, 221 N. W., 543, 544, it was held, quoting syllabus: "Where amount of cash assets of insolvent bank at all times exceeded the amount of trust fund, and where assets of bank were not decreased from time of receipt of trust fund to the time of the receivership, fund was sufficiently traced into receiver's hands, entitling claimant to preference."

For these reasons I think that the decree of the Circuit Court should be reversed, and judgment of preference awarded to the finance company upon its claim.