14597

SPARTAN MILLS *ET AL.* v. LAW

(194 S. E., 653)

April, 1934.

*Mr. Donald Russell,* for appellant,

*Messrs. Perrin & Tinsley,* for respondents, Spartan Mills and W. B. Lawson,

January 7, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This appeal involves two distinct claims by Spartan Mills and by W. B. Lawson, both respondents, against John A. Law, Jr., as Receiver of the Merchants & Farmers Bank of Spartanburg, S. C., appellant. As the two claimants and their claims are unconnected, each will be construed separately.

The Farmers & Merchants Bank of Spartanburg, S. C., was a banking institution organized under the laws of this State, and engaged in a general banking business in Spar-

tanburg, S. C., until October 3, 1931, when it suspended business, and liquidation of its affairs was taken over by the Court of Common Pleas of Spartanburg County. A general order of reference was obtained, under the terms of which order the adjudication of all claims against the insolvent bank, hereinafter referred to as appellant, were referred to the Master of Spartanburg County.

The respondents filed their claims as preferred claims, and, after the introduction of evidence, the Master filed his report, recommending that said claims be allowed as such, and that the respondents be allowed interest thereon from the date of the suspension of the insolvent bank. The Receiver excepted to the report, upon the same exceptions as raised herein, and, upon the hearing of such exceptions, Hon. T. S. Sease, Judge, affirmed the recommendations of the Master by his decree. From this decree or order sustaining such claims as preferred and ordering judgment therefor, including interest, due notice of intention to appeal was given by the Receiver. Respondents have conceded, and properly so, that their claims against the insolvent bank are not entitled to draw interest, so this issue goes out of the case.

Before entering into a discussion of the salient features of the appeal, a question raised by respondents will be considered. The transcript of record fails to show that the judgment granted in Judge Sease's order has ever been entered. Because no judgment has been entered, and this appeal is from the order of Judge Sease, the respondents contend that this appeal is not properly before the Court, and should be dismissed.

In support of this conclusion, respondents cite the cases of *Hanner v. Hillcrest Land Co.*, 165 S. C., 297, 298, 163 S. E., 727, and *Sherbert v. School District,* 169 S. C., 191, 168 S. E., 391. Neither of these cases are applicable, as both appeals arose from the verdict of a jury, an action at law, and the effect of both cases has been destroyed by the pass-

age of the Act of 1934, 38 Statutes, p. 1214, which permits an appeal from a verdict.

This appeal is from a decree in equity and is a final determination of the rights of the parties. The decree of Judge Sease orders judgment for the respondents, which decree is a judgment. "The judgment issues from the Court not from the attorneys or the clerk." *Clark v. Melton,* 19 S. C., 498. As stated in the *Sherbert case, supra,* respondent's point is more technical than substantial. Supreme Court Rule 4, Paragraph 3, provides that the "nature of the order of judgment appealed from" should be set forth, but the rule does not provide that the entry of the judgment is required. Nor does Section 781, Code of Laws of 1932, require the entry of the judgment, but only refers to "an order, decree or judgment granted or rendered." The entry of a judgment is merely a ministerial act and for the purposes of notice, lien, and enforcement. The "Statement" of the transcript of record gives the date and nature of the judgment granted or rendered. The failure to show entry of the judgment is not so essential as to dismiss the appeal.

Spartan Mills, for at least twenty-eight years, was a depositor in the Farmers & Merchants Bank. At the close of every business day Spartan Mills would send to the Farmers & Merchants Bank a voucher or check payable to the order of the bank to cover purchases of cotton made the date of the voucher or check, or the day before. Each voucher contained thereon an itemized account, directing the bank to pay to the named parties the designated sums of moneys, the total being charged by the bank to the account of Spartan Mills.

On October 2, 1931, Spartan Mills, in its usual course of business, sent to the bank its check for $2,816.16, payable to the Farmers & Merchants Bank, upon which check the First National Bank had a memorandum of $1,483.15; the American National Bank, a memorandum of $351.36, and the Central National Bank, a memorandum of $981.65.

The check was cashed by the bank and the account of Spartan Mills charged with the full amount of said voucher on October 3, 1931. The memoranda of the First National Bank and the American National Bank were paid, but the Central National Bank didn't draw that day, leaving a balance in cash in the hands of the bank under said voucher of $981.65. A credit. or deposit slip was then drawn for $981.65, and put on the counter for the Central National Bank, but was turned over to the Receiver of the Merchants & Farmers Bank. The Spartan Mills had on October 2 and October 3 ample funds in its account to pay the check for $2,816.16.

Is the respondent Spartan Mills a general creditor of the insolvent bank or a preferred claimant? There is no issue as to the facts, but the difficulty lies in the application of the law to the facts; and it must be admitted that there is apparent confusion of the law.

This Court has heretofore, in numerous decisions, defined the elements constituting a preferred claim and has forcibly declared that one who claims to be a preferred creditor "must establish his right clearly." *Citizens' Bank v. Bradley,* 136 S. C., 511, 515, 134 S. E., 510, 511; *Rice et al. v. City of Columbia et al.,* 143 S. C., 516, 539, 141 S. E., 705; *Bradley v. Guess,* 165 S. C., 161, 163 S. E., 466. The clear establishment of the status of a preferred claimant is predicated upon the often-repeated principle that, when a corporation, bank or otherwise, becomes insolvent, its assets are a trust fund for the benefit of all its creditors, and, if there is no lien on the fund passing into the hands of the Receiver, the distribution of the assets among the creditors must be *pari passu. Dabney v. Bank,* 3 S. C., 124; *Rice et al. v. City of Columbia et al., supra; Bradley, State Bank Examiner, v. Guess, supra.*

The relationship existing between a bank and its depositors, when there are no elevating circumstances, is simply that of creditor and debtor (*Southern Trust Co. v. Wilkins,* 101 S. C., 457, 86 S. E.,

26), which relationship fixes only a right of equality. The claimant, in order to establish his preferred status, must show the creation of a trust, prior to the receivership, and also prove a trust *res* which actually augmented the assets of the closed bank, which trust *res* can be traced into the hands of the Receiver upon insolvency. *Ex parte Michie,* 167 S. C., 1, 165 S. E., 359; *Ex parte Bank of Aynor,* 144 S. C., 147, 164, 142 S. E., 239; *Peurifoy, Receiver, v. Boswell,* 162 S. C., 107, 124, 160 S. E., 156. Of course, a different rule applies as to a trust *ex maleficio,* with which we are not concerned in this case, as there are no charges of any fraud against the insolvent bank. In following the trust *res,* when the trust *res* consists of money, into the hands of a Receiver, it is not necessary that the money be so segregated from other money in the coffers of the bank as to be susceptible of specific identification, but, as expressed in *White v. Commercial & Farmers' Bank,* 60 S. C., 122, 38 S. E., 453, 455, "that money, having no earmark, cannot be followed, has been practically repudiated in the more modern cases; the doctrine now held being that in following a trust fund it is not necessary to trace the identical coins or bills of which it is composed. Substantial identity is all that need be proved, and therefore a *cestui que* trust may pursue and recover a trust fund originally received by the trustee in the form of money, so long as its identity as a fund can be ascertained, although he may be unable to trace the identical coins or bank bills in which such money was originally paid to the trustees. As an illustration of this, it is said in some of the cases that if a trustee receives a sum of money impressed with a trust, and puts such money into a bag along with other money which belongs to the trustee in his own right, the *cestui que* trust has a right to take out of that bag the amount of the trust fund which the trustee had put in the bag; and this for the reason that so much of the money in the bag belongs to the *cestui que* trust, and not to the trustee, and the fact that in taking out the money he may get some of the coins or

bills which belonged to the trustee in his own right cannot affect the question, as he gets no more than what belongs to him."

According to the undisputed evidence, Spartan Mills had for many years maintained a large deposit with the appellant bank. As to this deposit Spartan Mills was a creditor of the bank, the debtor. At various times, practically every business day, as this claimant purchased cotton, it issued a voucher to the bank, directing the latter to pay to the parties named in the voucher a specified sum of money. These vouchers were charged to respondent's account. Upon the receipt of the voucher and the cashing of the same by the bank, did the relationship of creditor and debtor, as to the sums of money named in the voucher, become extinguished?

The appellant earnestly contends that no trust exists because of the absence of an "identifiable *res*," and that a check drawn by a depositor upon the bank cannot create a "fund," a "particular property," to be the subject-matter of a trust; some actual money or property must be segregated or set apart. The doctrine of this State does not demand that there be a segregation of any fund of money in the literal sense of the word, but all that is necessary is substantial identification as a fund, not the identical coins or bills. *White v. Commercial Bank, supra.* And, where there is "evidence offered to earmark, identify, or trace these funds into the hands of the Receiver" (*Peurifoy, Rec'r, v. Continental Finance Co.,* 164 S. C., 261, 270, 162 S. E., 458, 462), if such evidence is convincing, then the identification is sufficient. Mr. Crews, the assistant cashier, testified that on October 3, the date the bank closed, in accordance with the instructions of respondent, the bank charged the voucher to the account of Spartan Mills; that no actual cash was taken out, but that he made a deposit slip for $981.65 for the Central National Bank, and, "when they would come in the next day, we would just cancel one with the other"; that the principal procedure consisted of book-

keeping entries, and the cash amount was never turned over to the Central National Bank, but was turned over to the Receiver of the bank. In this connection, appellant contends the respondent has shown nothing more than bookkeeping entries which is not sufficient to create a trust fund that could be identified and traced into the hands of the Receiver.

This Court has heretofore stated in *Peurifoy, Rece'r, v. Boswell et al.,* 162 S. C., 107, 127, 160 S. E., 156, 163: "Whether or not such a trust existed is to be determined, not by the book entries or the terminology used by the bank with reference to the deposit, but by the facts."

As before stated, the claimant "must establish his right clearly." The evidence in this case in behalf of the respondent Spartan Mills fails to meet the degree of proof as required. No one paid any actual money to the bank. The bank, the debtor of the respondent, received merely written orders to pay a debt owed by the respondent to the Central National Bank and to debit the account of respondent for said payment. The bank charged the account of the respondent for the sum of money and credited the Central National Bank. So far as concerns the actual cash assets of the bank, and which went into the hands of the Receiver, they were neither increased nor depleted. A mere bookkeeping transfer was made, and while, as between the bank and respondent, the bank was not authorized to deposit to the credit of the Central National Bank the sum of $981.65, nevertheless the fact remains that no one put into the vaults of the bank any part of the $981.65, which was already there when the voucher was delivered to the bank, and which was there when the Receiver took over the assets. The transaction was one that the claimant entered into for his own convenience, knowing that when the bank cashed its check or voucher it would be mingled with the general funds of the bank. The language of the Court in the case of *Citizens' Bank of Pinewood v. Bradley, State Bank Examiner,* 136 S. C., 511, 512, 134 S.

E., 510, quoting from the case of *Bellevue Bank v. Coffin*, 22 Idaho, 210, 125 P., 816, is applicable: "The true rule governing the particular facts of this case is that, if the transaction results in nothing more than an exchange of creditors or the mere cancellation of one liability and the assumption of another, * * * such facts alone are not sufficient to show that the assets of the trustee or its assignee have been increased by such transaction, and therefore there has been no betterment of the estate, and such assets have not been improved or rendered more valuable, and are in no way impressed with a trust."

Assuming for the moment that there existed a trust relationship between Spartan Mills and the bank, there is no evidence to show that any money was placed in the bank which was not already there at the time the bank cashed the voucher, and, consequently, there was no *"res"* upon which a trust could be imposed. It may be contended that, when Spartan Mills delivered its check or voucher to the bank, and the bank cashed the same, it was as if Spartan Mills had cashed a check, and then redeposited it with the bank for a special purpose. This contention is circumvented by reason of the fact that no money was handed to the bank, to which the moment before it had not the slightest claim, and which would have been productive of a *"res"* for a trust. The transaction did not diminish the bank's debt to Spartan Mills, nor could the transaction without the advent of "new money" have increased the assets. The results were the same had the transaction never been entered into.

Again referring to *Citizens' Bank of Pinewood v. Bradley, Examiner, supra,* one Baxley purchased a load of flour from the Koiner Flour Company. The order was shipped, order notify, with draft and bill of lading attached. The draft with bill of lading was mailed to Citizens' Bank of Pinewood. Baxley paid the draft with a check upon his personal account, and the bank remitted by means of a cashier's check in payment of the draft, but the bank was closed before the check could be cashed. In denying to claimant

any right of preference, the Court stated: "Prior to the transaction in question, Baxley was, as a depositor, a creditor of the Pinewood Bank to the extent of the balance due upon his deposit account. When he drew his check on the bank for $359.40 in payment of the draft of the Koiner Company, the bank was relieved as his debtor to that extent, and became the debtor of the owner of the draft. The transaction amounted to nothing more than a substitution of one creditor for another, *pro tanto;* nothing was added to the assets of the bank and nothing passed to the liquidating committee."

Spartan Mills anticipated the arrival of the draft by issuing its check to the bank to pay the draft of the Central National Bank upon its arrival, which distinction is not essential.

Another case of interest is that of *Ex parte Town of Darlington,* 168 S. C., 242, 167 S. E., 412, 414.

In that case, the Town of Darlington had a large deposit with the Bank of Darlington. The town, through its treasurer, went to the bank and issued its check thereon for the sum of $20,000.00 and received from the bank its check drawn to the order of the treasurer of the town on a bank in New York for a similar sum, such draft to be used by the town for the payment of its note shortly maturing in New York City. Before the draft on the New York bank could be collected the Bank of Darlington closed. By reason of the transaction just detailed, the Town of Darlington claimed a preference. The Circuit Court, in an order which was adopted by the Supreme Court, denied a right of preference because, among other things, there was an absence of any augmentation of the assets of the insolvent bank by the transaction. Speaking to this point, the Court said: "There was no change of status affecting the rights or liabilities of the parties, or either of them. The transaction resulted in no loss, gain, or benefit to either. The town parted with, and the bank received, nothing of value and

the bank's indebtedness to the town is the same now that it was before the draft was issued."

Attention is also called to *Kennedy v. Zimmerman,* 175 S. C., 122, 178 S. E., 497, 498. The claimant had a substantial deposit with one of the branches of the Central Union Bank. He instructed that branch to purchase for his account certain Liberty Bonds and to charge the purchase price against his account. The bonds were duly purchased but, before a delivery was had, the Central Union Bank closed. At all times between the date the claimant instructed the bank to purchase the bonds and the suspension of the bank he had on deposit more than sufficient funds to cover the costs of the bonds. After the suspension of the bank, the claimant asserted a right to the bonds purchased by the bank pursuant to his instructions. In holding that the claimant was not entitled to such preference, the Circuit Court order which was affirmed and in effect adopted by the Supreme Court held, among other things, as follows: "Another reason why the delivery of these bonds to the plaintiff must be denied arises in his failure to meet the second requisite entitling him to a preferential status, namely, that the transaction had the effect of augmenting the assets of the bank. See *Peurifoy, Receiver, v. Continental Finance Company,* 164 S. C., 261, 162 S. E., 458."

Spartan Mills relies strongly upon Section 6960, Code of Laws of 1932, which position is without merit. A proper analysis of this statute is to be found in *Ex parte Sanders,* 168 S. C., 323, 167 S. E., 154, 156, wherein the Court, in the language of Justice Bonham, states: "One who presents for payment at a bank an item drawn by one who has on deposit in the bank funds sufficient to pay it and the item is charged to the drawer or maker thereof, but the amount of the item is not paid to him who presents it, either in money or by an unconditional credit on the books of the payor bank, or on the books of any other bank, and the payor bank fails, the owner of the item shall have a preferred claim upon the assets of the payee bank, unless he has been

paid in money, or has requested or accepted an unconditional credit on the books of the payor bank or some other bank," etc.

This section changes the rule of absolute equality ██ among creditors of an insolvent bank, and is in derogation of the common law. It is to be construed and confined to the classes specifically embraced therein. The statutory benefit is conferred upon the "owner or owners of such item or items," and not upon the drawer or maker. Although the "item" did not reach Central National Bank prior to the suspension of Merchants & Farmers Bank, Spartan Mills was not the owner thereof in the contemplation of the Statute.

Spartan Mills remained throughout the transaction a depositor or creditor, and no reason has been shown sufficient to declare a trust or preference.

The Lawson Claim: On October 2, 1931, Mr. W. B. Lawson went to see a Mr. White, an official of the Merchants & Farmers Bank, about cashing twenty shares of building and loan stock of the Peoples Building & Loan Association. Mr. White apparently was also an official of the Building & Loan Association. Mr. White agreed to cash the twenty shares of stock without the required sixty days' notice; and instructed the assistant cashier of the bank to pay Mr. Lawson for the stock, amounting to $460.00. The assistant cashier started counting out the money, but, upon the request of Mr. Lawson, he was given a cashier's check of the Merchants & Farmers Bank instead of the cash. The bank suspended operations October 3, 1931, with Mr. Lawson's cashier's check unpaid.

The pertinent principles of law have heretofore been ██ discussed and need not be restated. The general rule applicable to cashier's checks is to be found in 95 A. L. R., 677: "In the absence of fraud the purchase of a cashier's check, like the purchase of a draft on a correspondent bank, creates the relation of creditor and debtor, not that of principal and agent, with the result that the pur-

chaser, or holder thereof, is not entitled to a preference over general creditors in the assets of the bank issuing the check, on its failure before the check is paid."

In "determining whether the payee or holder of a cashier's check is entitled to a preference in the assets of the bank drawing it, on the latter's insolvency before payment of the check, the form of the paper itself, *i.e.*, the fact that it is a cashier's check instead of a draft or other commercial paper, is not necessarily a deciding factor." 95 A. L. R., 676.

This Court has heretofore considered preferences arising out of cashier's checks, one of the latest cases being that of *South Carolina State Bank v. Citizens' Bank,* 173 S. C., 496, 176 S. E., 346, 95 A. L. R., 667. One L. B. Rogers sold to Swift & Co. some cotton seed and meal, receiving from Swift & Co. a "seed ticket" for $1,379.24 in payment thereof. Rogers presented the "seed ticket" to the bank, but the bank did not have sufficient funds to pay the "seed ticket," and Rogers was prevailed upon to accept $100.00 in cash and a cashier's check for the remainder. The bank closed, and the check was never paid. A preference was denied, but the prevailing opinion, as well as the two concurring opinions, clearly indicates that the record fails to show receipt of the proceeds of the seed ticket by the Receiver, and, if such had been shown, the decision would have been the reverse. The Court gives emphasis to the fact that Rogers was fully informed that the bank did not have sufficient funds to pay the seed ticket, and accepted the cashier's check which amounted to no more than a promise to pay at a future day.

The essential difference between the Rogers claim and the Lawson claim is at once apparent. Mr. Lawson had no means of knowing that the bank was insolvent, and to all appearances the bank had ample funds to cash the stock. Thus there is a clear showing that the stock or the proceeds thereof went into the hands of the Receiver, an advent of new money which augmented the as-

sets of the bank going into the hands of the Receiver. Lawson was not a depositor in the bank, nor did he intend to become one, for, if he had so intended, he could readily have requested a deposit slip instead of a cashier's check. Nor did Mr. Lawson go to the bank for the bank to cash his stock, but he went to see Mr. White, who was an official of the Building & Loan Association, as well as an official of the bank, and the Building & Loan Association cashed the stock through the medium of the bank, clearly indicating that Lawson did not intend to become a general creditor of the bank.

The Master's report and the decree of Judge Sease holds that Lawson is entitled to a preference and citing the case of *Railway Express Agency et al. v..Bethea,* 165 S. C., 230, 163 S. E., 637. In this case the agent of the express company purchased three drafts, drawn upon two other banks, in the total amount of $992.00, using cash and checks. The aggregate amount of the three drafts were allowed as a preferred claim. The appellant contends that this case is overruled by the case of *South Carolina State Bank v. Citizens' Bank, supra,* but, as heretofore pointed out, the Court clearly indicates that, if there had been shown an augmentation of assets, a preference would have been sustained. The main opinion was written by Hon. W. C. Cothran, Acting Associate Justice. There are two concurring opinions, one by former Chief Justice Blease and the other by Chief Justice Stabler, with a dissenting opinion by Justice Carter. The main opinion states that the *Bethea case* "appears to be somewhat out 'of line"; however, the Court did not overrule the *Bethea case,* but intimated the *Bethea case* would have been followed had the element of augmentation of assets been proven. The *Bethea case* was predicated upon *Hampton Loan & Exchange Bank v. W. F. Lightsey, Receiver of the Bank of Hampton,* 155 S. C., 222, 152 S. E., 425, 428, in which the Court quoted from *Livingstain v. Columbian B. & T. Co.,* 77 S. C., 305, 57 S. E., 182, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568, as follows:

"Had the checks been issued for cash paid into the bank or before insolvency, the other depositors could have interposed no countervailing equity, and the petitioners [purchasers of the checks] would have been entitled to subrogation."

Although the present case does not contain the features of subrogation, there is no essential difference between it and the *Bethea case,* and we see no reason to disturb the doctrine of the *Bethea case.*

The appellant argues this case is controlled by the cases of *Ex parte Sanders, supra,* and *Ex parte Town of Darlington, supra.*

In the *Sanders case,* the claimant carried a check to the bank and received in exchange therefor $100.00 in cash and a cashier's check drawn upon another bank. The payor bank closed before the check could be cashed. Sanders claimed a priority under Section 6960, and also that there was an augmentation of assets. The Court, however, held that the claim of Sanders did not belong to the class embraced by Section 6960, and there had been no increase in the assets of the bank.

The facts in the case of *Ex parte Town of Darlington, supra,* have hereinbefore been narrated. The distinction between the *Darlington case* and the Lawson claim is apparent. The Town of Darlington was a depositor while Lawson was not. There was no increase in the assets of the bank as a result of the transaction in the Darlington litigation while the assets of the bank were increased as a result of the Lawson transaction.

While the actual delivery of the cash was waived by Lawson, the substance behind the form of the bookkeeping entries, resulting in the delivery of the cashier's check, reveals at least the constructive delivery and redelivery of cash in the sum of $460.00, thus augmenting the bank's assets in that amount. The augmentation of the bank's assets in conjunction with the clear showing that Lawson did not intend to become a simple creditor of the bank, and did

not become so, is conclusive that Lawson's claim is of a preferred status.

In accordance with the foregoing, it is the judgment of this Court that the decree appealed from, in so far as it relates to the claim of Spartan Mills, be, and it is, reversed; and that it be affirmed as to the claim of Lawson.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.